STATE of Iowa, Appellant,

v.

Keith Frederick SEERING, Appellee.

No. 03–0776.

Supreme Court of Iowa.

July 29, 2005.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, and Barbara A. Edmondson, County Attorney, for appellant.

Eric D. Tindal of Nidey Pederson Erdahl & Tindal, Williamsburg, for appellee.

Catherine K. Levine, Des Moines, for amicus curiae Iowa Civil Liberties Union.

CADY, Justice.

In this appeal, we consider the constitutionality of Iowa's statutory prohibition against convicted sex offenders living within two thousand feet of an elementary or secondary school or child care facility. The appellee, a convicted sex offender, brought a successful constitutional challenge to the statute in the district court. The State appeals from the district court's ruling. For the reasons that follow, we reverse and remand this case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

In October 2000, Keith Frederick Seering was convicted of lascivious conduct with a minor in violation of Iowa Code section 709.14 (1999) after committing numerous sexually abusive acts against his teenaged daughter. Seering was given a suspended sentence and placed on probation. His probation was later revoked, and he was placed in a halfway house in Iowa City to complete his sentence. After being released in August 2002, he moved to Riverside, where his wife and daughter were residing with family friends.

Shortly after his arrival in Riverside, Seering went to the county sheriff's office to register himself as a sex offender at his new address. *See* Iowa Code §§ 692A.2–.3 (2003) (defining persons required to register and describing the sex offender registration process). While there, an officer told Seering that he was "99.99 percent sure that [Seering] was going to be within a two thousand-foot buffer rule of at least a day care, if not a school." The "buffer rule" mentioned by the officer is a two-thousand-foot residency restriction imposed by Iowa Code section 692A.2A. This statute prohibits a person who has committed a sexually violent offense or other crime against a minor from residing within two thousand feet of an elementary or secondary school or child care center.[1] *Id.*

---

1. Iowa Code section 692A.2A (2003) provides:

 **692A.2A Residency Restrictions—child care facilities and schools.**

 1. For purposes of this section, *"person"* means a person who has committed a criminal offense against a minor, or an aggravated offense, sexually violent offense, or other relevant offense that involved a minor.

 2. A person shall not reside within two thousand feet of the real property comprising a public or nonpublic elementary or secondary school or a child care facility.

 3. A person who resides within two thousand feet of the real property compris-

§ 692A.2A. Seering informed the officer that he was hoping to find a new home in Johnson County and would soon move from Riverside.

After his conversation with Seering, the officer asked a county employee to prepare a map of Washington County showing the areas where Seering or another offender could live without violating the statute. The officer then met again with Seering and showed him the map, which indicated limited areas where Seering could live in compliance with the residency restriction. The officer also warned Seering that he had one more week to move to an unrestricted area or he would face charges under the statute. *See id.* § 692A.2A(3) (making a violation of the residency restriction an aggravated misdemeanor).

A few weeks later, the officer went to the Riverside address to determine whether Seering had moved. The owner of the residence told the officer that Seering was still living in the home. When confronted with this information, Seering claimed he was actually living out of his car. After finding no evidence to substantiate Seering's claim, the officer arrested him for violating the residency restriction.

In October 2002, Seering returned to the sheriff's office to register a new address in Johnson County. This address was an abandoned farm property. Seering, his wife, and his daughter had parked a fold-down camper on the property and were living together in the camper. The family had a history of struggling to maintain a steady residence, even before the residency restriction, due to their lack of sufficient finances. However, the residency restriction made it more difficult to live together and forced them to move to the farm property. Shortly after moving onto the property, the property owner demanded the Seerings move.

On February 10, 2003, Seering filed a motion to dismiss the criminal charge against him relating to the residency restriction. Seering contended the residency restriction statute was unconstitutional because it violated his state and federal constitutional rights related to ex post facto laws, substantive and procedural due process, vague and overbroad laws, equal protection, cruel and unusual punishment, and bills of attainder.

On April 3, the district court issued its ruling on Seering's motion. The court determined the residency restriction statute was unconstitutional on substantive and procedural due process, ex post facto, self-incrimination, and cruel and unusual punishment grounds. It rejected Seering's arguments that the residency restriction impinged rights related to overbreadth or bills of attainder.

The State appeals from the district court's ruling granting Seering's motion to dismiss, asserting error on each of the district court's conclusions. For the rea-

ing a public or nonpublic elementary or secondary school, or a child care facility, commits an aggravated misdemeanor.

4. A person residing within two thousand feet of the real property comprising a public or nonpublic elementary or secondary school or a child care facility does not commit a violation of this section if any of the following apply:

a. The person is required to serve a sentence at a jail, prison, juvenile facility, or other correctional institution or facility.

b. The person is subject to an order of commitment under chapter 229A.

c. The person has established a residence prior to July 1, 2002, or a school or child care facility is newly located on or after July 1, 2002.

d. The person is a minor or a ward under a guardianship.

sons that follow, we reverse and remand this case for further proceedings consistent with this opinion.

## II. Standard of Review.

 Our review of constitutional claims related to statutes is well established:

> We review constitutional challenges to a statute de novo. In doing so, we must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt. Moreover, "the challenger must refute every reasonable basis upon which the statute could be found to be constitutional." Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*State v. Hernandez–Lopez*, 639 N.W.2d 226, 233 (Iowa 2002) (citations omitted); *accord Santi v. Santi*, 633 N.W.2d 312, 316 (Iowa 2001).

## III. Preservation of Error.

There have been several constitutional claims made throughout the proceedings in this case. Ultimately, many of these claims are not viable on appeal because they were not properly preserved or presented for our review.

In his original motion to dismiss, Seering contended the residency restriction statute violated his state and federal constitutional rights relating to ex post facto laws, substantive and procedural due process, vague and overbroad laws, equal protection, cruel and unusual punishment, and bills of attainder. In its appellate brief, the State presented arguments on each of the issues raised by Seering, as well as an argument relating to self-incrimination, apparently based on the district court's dis-

cussion of the issue. In his appellate brief, however, Seering reasserted only his claims based on substantive and procedural due process, ex post facto laws, self-incrimination, and cruel and unusual punishment. He also raised a new claim related to free association between family members. In addition, the Iowa Civil Liberties Union, as amicus curiae, presented a brief asserting and explaining why Iowa Code section 692A.2A infringes on Seering's "fundamental right to travel." In sum, eleven discrete constitutional claims have been raised in one form or another at various points in these proceedings. However, several of these claims have not been properly preserved or presented for our review.

 Seering chose not to present arguments on appeal relating to his prior-claimed constitutional interests pertaining to overbreadth, vagueness, equal protection, or bills of attainder. In the absence of an argument on these allegations, we deem them waived. *See* Iowa R.App. P. 6.14(1)(*c*); *see also Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 521 (Iowa 1998). Moreover, Seering admits that the free association claim "was not specifically pled to the District Court," but argues such a claim "is inherent in the argument that 692A.2A unconstitutionally infringed upon Seering's fundamental family rights." Yet, our rules of preservation do not hinge on the mere entwinement of claims or the inherency of a discrete claim as part of a broader claim. *See Hernandez–Lopez*, 639 N.W.2d at 234; *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). His free association claim has not been preserved. Finally, the efforts of amicus curiae are unavailing insofar as preservation is concerned. *See Rants v. Vilsack*, 684 N.W.2d 193, 199 (Iowa 2004); *Mueller v. St. Ansgar State Bank*, 465 N.W.2d 659, 660 (Iowa 1991); *Martin v. Peoples Mut. Sav. &*

*Loan Ass'n,* 319 N.W.2d 220, 230 (Iowa 1982). For this reason, any claim of an infringement on Seering's "fundamental right to travel" has not been preserved.

Ultimately, five distinct grounds relating to the constitutionality of the statute remain viable: substantive and procedural due process, ex post facto, self-incrimination, and cruel and unusual punishment. "Any other issues raised by the defendant[] and not specifically addressed are also deemed unpreserved." *Hernandez–Lopez,* 639 N.W.2d at 234.

## IV. Due Process.

Seering challenges the residency restriction statute on both substantive and procedural due process grounds, contending the statute is unconstitutional on its face and as applied to him. His due process claims are grounded in the guarantees of both the federal and state constitutions. U.S. Const. amends. V, XIV; Iowa Const. art. I, § 9. These due process provisions "are nearly identical in scope, import and purpose." *Hernandez–Lopez,* 639 N.W.2d at 237; *accord In re Detention of Cubbage,* 671 N.W.2d 442, 446 (Iowa 2003). Accordingly, we typically interpret both in a similar fashion. *See Hernandez–Lopez,* 639 N.W.2d at 237; *Cubbage,* 671 N.W.2d at 446. In the absence of an argument that our analysis under each should differ, we construe them similarly in this case as well. *See In re Detention of Garren,* 620 N.W.2d 275, 280 n. 1 (Iowa 2000); *see also Cubbage,* 671 N.W.2d at 446; *Hernandez–Lopez,* 639 N.W.2d at 237.

▪▪ The Due Process Clauses are understood to include two separate but related concepts. *Hernandez–Lopez,* 639 N.W.2d at 237. Both are at issue in this case. "The first, substantive due process, prevents the government from interfering with 'rights "implicit in the concept of ordered liberty." ' " *Id.* (quoting *United*

*States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697, 708 (1987)). Its companion concept, procedural due process, "act[s] as a constraint on government action that infringes upon an individual's liberty interest, such as the freedom from physical restraint." *Id.* at 240. We consider each of these concepts in turn.

### A. Substantive Due Process.

▪ There are two stages to any substantive due process inquiry. The first requires a determination of "the nature of the individual right involved." *Id.* at 238. If a fundamental right is implicated, we apply strict scrutiny analysis, which requires· a determination of "whether the government action infringing the fundamental right is narrowly tailored to serve a compelling government interest." *Id.* If a fundamental right is not implicated, a statute need only survive a rational basis analysis, which requires us to consider whether there is "a reasonable fit between the government interest and the means utilized to advance that interest." *Id.*

The question of what type of interest is infringed in this case presents a major divide between the parties. Launching from several state and federal precedents in the area of personal privacy and familial association, Seering argues the statute prevents an offender—specifically him and his family—from living together on their own terms, in violation of substantive due process guarantees. He points to his family's repeated efforts to find a home within the residency restriction scheme and argues the restriction is responsible for his inability to find an acceptable place to live together with his family. Ultimately, Seering identifies the fundamental right implicated in this case to be the "right to the privacy and freedom of association in one's family." He asserts this claimed

right is directly affected by the statute, which infringes on "the ability to live with spouses and the right to carry on a daily routine and make basic determinations about child care."

The State responds to Seering's arguments by asserting that he has misidentified the interest at hand. It argues that it is not the familial right that is truly implicated by the statute, but rather an interest in having unrestricted choice in picking where Seering—or any offender—and, in turn, his family, lives. The State argues that this interest is not fundamental and only warrants application of rational basis scrutiny for determining whether the statute is constitutional. Moreover, the State contends that any impingement on Seering's familial interest is largely the result of his family's financial condition, not the statute. It also points out that the Seerings have actually lived together for much of the time during the proceedings in his case. The State believes that each of these factors makes it impossible for Seering to meet the high threshold for proving the statute unconstitutional. *See id.* at 233 ("The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt.").

▇▇▇▇ In presenting his arguments, Seering draws on a long line of authority confirming that the familial relationship is a fundamental liberty interest protected by both constitutions. *See, e.g., Lyng v. Castillo,* 477 U.S. 635, 638, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527, 533 (1986); *Moore v. City of East Cleveland,* 431 U.S. 494, 499, 97 S.Ct. 1932, 1935–36, 52 L.Ed.2d 531, 537 (1977); *Wisconsin v. Yoder,* 406 U.S. 205, 213–14, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15, 24 (1972); *In re K.M.,* 653 N.W.2d 602, 607 (Iowa 2002); *Santi,* 633 N.W.2d at 317; *In re Bruce,* 522 N.W.2d 67, 72 (Iowa 1994). It is ultimately our duty to ensure that claims that constitutional rights have been violated are properly considered. *See Cubbage,* 671 N.W.2d at 446; *Bowers v. Polk County Bd. of Supervisors,* 638 N.W.2d 682, 692 (Iowa 2002); *accord Chavez v. Martinez,* 538 U.S. 760, 775–76, 123 S.Ct. 1994, 2006, 155 L.Ed.2d 984, 999 (2003) (stating Supreme Court precedents "require[] a ' "careful description" ' of the asserted fundamental liberty interest for the purposes of substantive due process analysis" (citation omitted)). This duty arises in part from our related duty to avoid constitutional questions not necessary to the resolution of an appeal. *See State v. Button,* 622 N.W.2d 480, 485 (Iowa 2001); *State v. Quintero,* 480 N.W.2d 50, 51 (Iowa 1992); *In re J.A.N.,* 346 N.W.2d 495, 498 (Iowa 1984); *accord Clinton v. Jones,* 520 U.S. 681, 690 n. 11, 117 S.Ct. 1636, 1642 n. 11, 137 L.Ed.2d 945, 958 n. 11 (1997). Both of these considerations create a general requirement that claims involving fundamental rights must identify the claimed right with accuracy and specificity so that our analysis proceeds on appropriate grounds. *Bowers,* 638 N.W.2d at 694 ("Substantive due process analysis must begin with a careful description of the asserted right."); *accord Chavez,* 538 U.S. at 775–76, 123 S.Ct. at 2006, 155 L.Ed.2d at 999. In the absence of a sufficient presentation of the claimed right, we have not hesitated in the past to reconsider and realign a party's arguments to properly address the true constitutional question presented. *See Cubbage,* 671 N.W.2d at 446; *Bowers,* 638 N.W.2d at 692. We feel it is necessary to make this adjustment in this case as well.

Both our precedents and those of the Supreme Court indicate that an alleged infringement on a familial right is unconstitutional only when an infringement has a direct and substantial impact on the familial relationship. *See Lyng,* 477 U.S. at 638, 106 S.Ct. at 2729, 91 L.Ed.2d at 533;

*Zablocki v. Redhail,* 434 U.S. 374, 386–87, 98 S.Ct. 673, 681, 54 L.Ed.2d 618, 631 (1978); *Moore,* 431 U.S. at 498–99, 97 S.Ct. at 1935, 52 L.Ed.2d at 537; *Sioux City Police Officers' Ass'n v. City of Sioux City,* 495 N.W.2d 687, 696 (Iowa 1993); *City of Panora v. Simmons,* 445 N.W.2d 363, 370 (Iowa 1989); *see also Santi,* 633 N.W.2d at 317 ("[T]he right to marry and rear children without governmental interference is not unlimited."). We do not believe this impact is present in this case. While the residency restriction may impact the Seerings insofar as they cannot choose the precise location where they can establish their home, it does not absolutely prevent them from living together. In fact, the record establishes that the Seerings specifically successfully lived together through much of the proceedings in this case. These facts lie in contrast to other familial rights cases in which the challenged statute substantially and directly impacted the familial interest. *See, e.g., Zablocki,* 434 U.S. at 386–87, 98 S.Ct. at 681, 54 L.Ed.2d at 631; *Moore,* 431 U.S. at 498–99, 97 S.Ct. at 1935, 52 L.Ed.2d at 537; *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010, 1018 (1967); *Santi,* 633 N.W.2d at 318; *see also Lyng,* 477 U.S. at 638, 106 S.Ct. at 2729, 91 L.Ed.2d at 533; *Sioux City Police Officers' Ass'n,* 495 N.W.2d at 696; *City of Panora,* 445 N.W.2d at 369–70.

Furthermore, those times during which the Seerings have been unable to live together were largely the result of circumstances outside of those created by the residency restriction. While we may be sympathetic to the difficulties created by the residency restriction for an offender and family who lack financial resources, these difficulties result from a social or political judgment that must be made by the legislature and not this court. In addition, Seering has not properly raised a claim that frames this issue as one based on monetary resources.

■ The claim Seering has raised is, at its core, based on freedom of choice in where an offender lives and under what conditions. Thus, we must determine what level of constitutional scrutiny an alleged impingement on this interest warrants. "Neither the Supreme Court nor this court has created a clear test for determining whether an alleged right that is not specifically and constitutionally enumerated is 'fundamental.'" *Cubbage,* 671 N.W.2d at 447. However, "[o]nly fundamental rights and liberties which are '"deeply rooted in this Nation's history and tradition"' and '"implicit in the concept of ordered liberty"' qualify for such protection." *Chavez,* 538 U.S. at 775, 123 S.Ct. at 2005, 155 L.Ed.2d at 999 (quoting *Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S.Ct. 2258, 2268 138 L.Ed.2d 772, 787–88 (1997)); *see also Lawrence v. Texas,* 539 U.S. 558, 572, 123 S.Ct. 2472, 2480, 156 L.Ed.2d 508, 521 (2003) (" 'History and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry.'" (Citation omitted.)). "[W]e have traditionally followed the Court's guidance in determining which rights are deemed fundamental." *Cubbage,* 671 N.W.2d at 447.

■ Although freedom of choice in residence is of keen interest to any individual, it is not a fundamental interest entitled to the highest constitutional protection. *See Prostrollo v. Univ. of S.D.,* 507 F.2d 775, 781 (8th Cir.1974). Importantly, neither this court nor the Supreme Court has ever recognized such an interest as " ' "deeply rooted in this Nation's history and tradition" ' " and " ' "implicit in the concept of ordered liberty" ' " so as to qualify for the highest constitutional protection. *Chavez,* 538 U.S. at 775, 123 S.Ct. at 2005, 155 L.Ed.2d at 999 (quoting

*Glucksberg,* 521 U.S. at 721, 117 S.Ct. at 2268, 138 L.Ed.2d at 787–88); *see also Cubbage,* 671 N.W.2d at 447. For these reasons, an interest in choice of residency is entitled to only rational basis review. *Hernandez–Lopez,* 639 N.W.2d at 238.

 As noted, the rational basis standard requires a consideration of whether there is "a reasonable fit between the government interest and the means utilized to advance that interest." *Id.* We believe such a fit exists in this case. As numerous authorities have acknowledged, "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 1153, 155 L.Ed.2d 164, 184 (2003) (citations omitted); *see also Cubbage,* 671 N.W.2d at 445 n. 2; *In re Detention of Swanson,* 668 N.W.2d 570, 576 (Iowa 2003). This threat was confirmed by some of the evidence presented by the State in defending the residency restriction in the district court. It is also clear that this threat was on the collective mind of the legislature in crafting the statute. Although additional testimony revealed that the two-thousand-foot restriction was not necessarily a perfect protection against this threat, perfection is not necessary to meet the rational basis standard. *See Bowers,* 638 N.W.2d at 689; *see also State v. Breuer,* 577 N.W.2d 41, 49–50 (Iowa 1998). We believe there is "a reasonable fit between the government interest" of preventing sex offenders from reoffending and the residency restriction statute, "the means utilized to advance that interest." *Hernandez–Lopez,* 639 N.W.2d at 238. For this reason, under the facts of this case, the residency restriction as applied to Seering does not violate substantive due process rights. Having decided the statute is not unconstitutional as applied to this case, it is unnecessary for us to address Seering's claim that the statute is unconstitutional on its face. *See*

*State v. Hepburn,* 270 N.W.2d 629, 631 (Iowa 1978); 1 Chester J. Antieau, *Modern Constitutional Law* § 15:36 (1969).

**B. Procedural Due Process.**

 "A person is entitled to procedural due process when state action threatens to deprive the person of a protected liberty or property interest." *Bowers,* 638 N.W.2d at 690; *accord Hernandez–Lopez,* 639 N.W.2d at 240. Accordingly, the first step in any procedural due process inquiry is the determination of "whether a protected liberty or property interest is involved." *Bowers,* 638 N.W.2d at 691. Such liberty interests have their source in the Federal Constitution and "include such things as freedom from bodily restraint, the right to contract, the right to marry and raise children, and the right to worship according to the dictates of a person's conscience." *Id.* Protected property interests "'are created and their dimensions are defined' not by the Constitution but by an independent source such as state law." *Id.* (citation omitted).

 Upon determining that a protected interest is involved, we undertake an analysis that balances three factors to determine what process is due:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail."

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976)); *accord Hernandez–Lopez,* 639 N.W.2d at 240. At the very least, proce-

dural due process requires "notice and opportunity to be heard in a proceeding that is 'adequate to safeguard the right for which the constitutional protection is invoked.'" *Bowers,* 638 N.W.2d at 691 (citation omitted); *accord Hernandez–Lopez,* 639 N.W.2d at 241. However, "'[n]o particular procedure violates [due process] merely because another method may seem fairer or wiser.'" *Bowers,* 638 N.W.2d at 691 (citation omitted).

Seering's procedural due process argument strikes at the heart of the protections extended by this constitutional value. He contends that section 692A.2A simply "fails to provide *any* opportunity for hearing." Aside from this bare allegation, however, Seering does not explain how the factors described above apply in this case. The State counters that examining section 692A.2A and balancing the factors we have previously listed reveals the residency restriction statute does not adversely affect Seering's procedural due process rights. We agree.

At the outset, we recognize that the statute is based on a legislative classification that includes no exemptions. The statute does not contain an exemption based on difficulty of finding a suitable place to live outside the two-thousand-foot restriction. The restriction imposed is based only on status as a convicted sex offender. "States are not barred by principles of '*procedural* due process'" from making classifications between sex offenders and others. *Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 8, 123 S.Ct. 1160, 1162, 155 L.Ed.2d 98, 105 (2003) (quoting *Michael H. v. Gerald D.,* 491 U.S. 110, 120, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality opinion)). Because there are no exemptions in the statute, Seering was not entitled to a hearing before he was charged under the statute to attempt to persuade the court that the statute should

not be applied to him. *Cf. Doe v. Miller,* 405 F.3d 700, 709 (8th Cir.2005) (stating that if the restriction applies to all sex offenders, notions of procedural due process do not require a hearing for "individuals who seek to provide that they are not individually dangerous").

The crux of Seering's constitutional claims is an alleged violation of a private interest in freedom of choice in residence. While this is an important interest, it is not a fundamental one. The residency restriction became law in a public process and after appropriate consideration by the legislature and governor. In creating the restriction, the legislature had important public interests in mind. Balancing these factors, we believe Seering was entitled to minimum procedural protections. Yet, he has not even explained how the residency restriction statute, particularly in his case, results in the deprivation of these protections.

The residency restriction arises from a validly enacted statute. As a statute based on status as a convicted sex offender, the minimum protections necessary under due process would be met by the notice under the statute and the trial. Furthermore, Seering has had ample opportunity to challenge the statute in court. Ultimately, each of these factors reveals that Seering has been provided adequate notice and opportunity to be heard. He has suffered no deprivation of his procedural due process rights.

## V. Ex Post Facto.

Both the federal and state constitutions' Ex Post Facto Clauses "'forbid the application of a new punitive measure to conduct already committed,'" and may also be violated "'when a statute makes more burdensome the punishment for a crime after its commission.'" *Schreiber v. State,* 666 N.W.2d 127, 129 (Iowa 2003);

*see also* U.S. Const. art. I, § 10; Iowa Const. art. I, § 21. The ex post facto prohibition extends only to "cases criminal in nature ... even where the civil consequences are 'serious' in nature." *Hills v. Iowa Dep't of Transp. & Motor Vehicle Div.*, 534 N.W.2d 640, 641 (Iowa 1995); *accord State v. Flam*, 587 N.W.2d 767, 768 (Iowa 1998) ("[T]he prohibition of ex post facto laws applies only to penal and criminal actions."). Thus, "[p]urely civil penalties ... are not subjected to such restrictions." *State v. Corwin*, 616 N.W.2d 600, 601 (Iowa 2000).

In deciding whether a statute violates the Ex Post Facto Clause by imposing prohibited punishment, the first task is to consider the intent of the legislature. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146–47, 155 L.Ed.2d 164, 176 (2003). If the statute is intended to impose criminal punishment, then the legislative intent controls, and the law is considered to be punitive. *Id.* at 92, 123 S.Ct. at 1147, 155 L.Ed.2d at 176. If the law was intended to be civil and nonpunitive, then we look to see if it is nevertheless "so punitive either in purpose or effect as to negate" the nonpunitive intent. *Id.* (citation and quotation marks omitted).

We believe the intent of our legislature in enacting section 692A.2A was not punitive. *See In re S.M.M.*, 558 N.W.2d 405, 406 (Iowa 1997) (citing *State v. Pickens*, 558 N.W.2d 396, 400 (Iowa 1997)). In *S.M.M.*, we specifically recognized the purpose of chapter 692A to be clear: "[T]o require registration of sex offenders and thereby protect society from those who because of probation, parole, or other release are given access to members of the public." *Id.* Thus, the restrictions of section 692A.2A are predominately clothed with the earmarks of legislation to protect the health and safety of individuals, especially children, not to impose punishment.

We therefore turn to consider whether, as Seering contends, the statute is "penal or regulatory in character." *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567, 9 L.Ed.2d 644, 661 (1963). The factors articulated in *Kennedy* are helpful guides to determine if a statute has a punitive effect, so that the regulatory scheme under the statute intended by the legislature to be nonpunitive nevertheless imposes ex post facto punishment. *See Smith*, 538 U.S. at 97, 123 S.Ct. at 1149, 155 L.Ed.2d at 180. These factors include: whether the law has been historically and traditionally considered to be punishment, whether it promotes the traditional goals of punishment, whether it imposes an affirmative disability or restraint, whether it has a rational connection to some nonpunitive purpose, and whether it is excessive with respect to the nonpunitive purpose. *Kennedy*, 372 U.S. at 168–69, 83 S.Ct. at 567–68, 9 L.Ed.2d at 661; *see Smith*, 538 U.S. at 97, 123 S.Ct. at 1149, 155 L.Ed.2d at 180.

In first considering the history of laws that restrict residency, Seering claims section 692A.2A results in banishment. Historically, banishment has been considered to be punishment. *See id.* at 98, 123 S.Ct. at 1150, 155 L.Ed.2d at 180. Yet, while Seering may have a sense of being banished to another area of the city, county, or state, true banishment goes beyond the mere restriction of "one's freedom to go or remain where others have the right to be: it often works a destruction on one's social, cultural, and political existence." *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 897 (2d Cir.1996). Section 692A.2A, to the contrary, only restricts sex offenders from residing in a particular area. Offenders are not banished from communities and are free to engage in most community activities. The statute is

far removed from the traditional concept of banishment.

We next consider whether section 692A.2A promotes the traditional goals of punishment. These goals center on deterrence and retribution. Although Seering may feel as if the restrictions and requirements impact deterrence and retribution, we recognize that many governmental programs exist that may "deter crime without imposing punishment." *Smith,* 538 U.S. at 102, 123 S.Ct. at 1152, 155 L.Ed.2d at 183. The nature of some governmental restrictions, especially those designed to protect the health and safety of children, may necessarily have some effects related to the goals of punishment. These effects, however, are secondary and largely "consistent with the regulatory objective." *Id.*

We next consider if section 692A.2A imposes an affirmative disability or restraint. The evidence in the case illustrates the difficulty that can result from the residency restrictions in obtaining housing in some communities of the state. These restrictions clearly impose a form of disability. Yet, the disabling nature of the statute is not absolute. Moreover, we are mindful of the objectives of the residency restriction under the statute and understand that a statute that imposes some degree of disability does not necessarily mean the state is imposing punishment. *Id.* at 100, 123 S.Ct. at 1151, 155 L.Ed.2d at 183.

We next consider if the statute has a rational relationship to a nonpunitive purpose. This factor is important because the previous factors have disclosed the mixed effects of the residency restrictions. Clearly, the statute has some punitive impact. Yet, this factor underscores that a statute is not punitive merely "because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Id.* at 103, 123 S.Ct. at 1152, 155 L.Ed.2d at 183.

We look for a rational connection, which clearly exists—to protect society.

Finally, we consider whether the statute is excessive in its goal of protecting society. While it is not easy to fully assess this factor, we are mindful that the relative gauge we use to test excessiveness includes the protection of children. In that light, we think it is more difficult to conclude that the restrictions are excessive considering the special needs of children in this particular aspect of our society and the imprecise nature of protecting children from the risk that convicted sex offenders might reoffend.

Considering all these factors, we cannot conclude that the statute imposes criminal punishment under this record. Notwithstanding, even if it was sufficiently penal in nature, we do not believe the statute punishes action that has occurred prior to the statute's enactment or increases the punishment for a crime after its commission. *See Corwin,* 616 N.W.2d at 601.

An offender such as Seering does not face punishment under the statute simply because he is a convicted offender. Instead, punishment may come based only on a violation of the statute. While this punishment is based at least partially on the offender's status as an offender, the status itself is not the impetus for punishment, nor is the punishment based on the prior offense. We recently considered a similar challenge to Iowa's mandatory DNA testing statute in *Schreiber,* 666 N.W.2d at 127. That statute required "inmates that have been convicted of certain offenses to submit a blood specimen for DNA profiling." *Id.* While we concluded that statute was not punitive, we also observed, "any prison sanctions that may be applied for refusing to provide a specimen would not be ex post facto punishment because the

sanctions do not enhance the sentence imposed by the court for the offense originally committed." *Id.* at 130. A similar conclusion is warranted here.

We also do not believe that the statute increases the punishment for a crime after its commission. *Corwin,* 616 N.W.2d at 601. While Seering's prior offenses may serve as a factual basis for application of the statute, it is the violation of the residency restriction statute itself that makes him subject to a new punishment. We have previously rejected similar ex post facto claims based on alleged increases in punishment for offenders previously convicted of offenses that make them subject to a new criminal penalty for a new statutory violation. *See State v. Swartz,* 601 N.W.2d 348, 351 (Iowa 1999) (stating that a statute pertaining to possession of a firearm by a felon "is intended to regulate a present situation that includes defendant's continuing status as a convicted felon"). The residency restriction statute makes Seering potentially subject to further criminal penalty based on his status as a sex offender, but does not "enhance the sentence imposed by the court for the offense originally committed"—namely, his prior sex offenses. *Id.* Instead, the residency restriction carries its own penalty for a violation of the statute based on conduct subsequent to the prior criminal activities of an offender.

## VI. Self-incrimination.

 Pursuant to the Fifth Amendment, no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege · against self-incrimination "applies equally to allow a person ' "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." ' " *In re C.H.,* 652 N.W.2d 144, 148 (Iowa 2002) (citation omitted). The State cannot compel " ' "testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered" ' " without violating the Fifth Amendment. *Id.* at 148–49 (citation omitted).

 Seering contends the residency restriction statute compelled him to incriminate himself by its requirement that he register his home address, which was in a restricted area. We disagree. It is important to understand that the challenge made by Seering in this case relates to the residency restriction imposed under the statute, not the separate registration requirement under the statute. The residency restriction cannot serve to support a claim of self-incrimination because there is nothing about the restriction that compels sex offenders to be witnesses against themselves. Any constitutional infirmity with the registration requirement would not affect the constitutionality of a substantive law making certain conduct criminal. Moreover, even if we assume Seering was compelled to act in a way that incriminated him, the remedy for such an action likely would be the exclusion of his incriminating statements at a subsequent trial, not the wholesale invalidation of the restriction statute. *See Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 1141–42, 79 L.Ed.2d 409, 418–19 (1984). Of course, we do not even need to reach this question because Seering has not been compelled in such a way that violates the Fifth Amendment. The challenge is premature.

## VII. Cruel and Unusual Punishment.

 Both the federal and state constitutions prohibit the imposition of cruel and unusual punishment. U.S. Const. amend. 8; Iowa Const. art. I, § 17. "Punishment may be cruel and unusual

because it inflicts torture, is otherwise barbaric, or is so excessively severe it is disproportionate to the offense charged." *State v. Cronkhite*, 613 N.W.2d 664, 669 (Iowa 2000). If a punishment "falls within the parameters of a statutorily prescribed penalty," it generally "does not constitute cruel and unusual punishment." *Id.* "Only extreme sentences that are 'grossly disproportionate' to the crime conceivably violate the Eighth Amendment." *Id.* (citations omitted). While we provide the legislature substantial deference "in setting the penalty for crimes," it is within our power "to determine whether the term of imprisonment imposed is grossly disproportionate to the crime charged." *Id.* "If it is not, no further analysis is necessary." *Id.*

We have previously acknowledged and applied three factors elucidated by the Supreme Court to determine whether a sentence is disproportionate to a crime: "(1) the gravity of the offense and harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions." *State v. Hoskins*, 586 N.W.2d 707, 709 (Iowa 1998). Seering advocates for our application of these criteria to his case and contends such an application reveals that the two-year sentence provided for in Iowa Code section 692A.2A is disproportionate and thus cruel and unusual punishment. However, we also have previously acknowledged that the viability of the factors noted in *Hoskins* has been limited by the Supreme Court's subsequent observation "that the proportionality analysis is only used 'in the rare case when a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality.'" *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836, 871 (1991)); *accord State v. August*, 589 N.W.2d 740, 742–43 (Iowa 1999); *State v. Lara*, 580 N.W.2d 783, 785 (Iowa 1998). Thus, our analysis begins with applying an objective test "measuring the harshness of the penalty against the gravity of the offense." *State v. Rubino*, 602 N.W.2d 558, 564 (Iowa 1999); *accord August*, 589 N.W.2d at 743.

We believe this threshold comparison in this case reveals that the two-year sentence for violating Iowa Code section 692A.2A is in appropriate proportion with the crime and thus is not cruel and unusual punishment. As noted, the residency restriction was created based on realistic concerns related to offender recidivism. Experts from both sides agreed that the mere opportunity to reoffend was often a key component of an offender's decision to reoffend. While the two-thousand-foot restriction may not be the best ultimate solution to the recidivism threat, it has been created to enforce an important state interest in protecting persons against sexual offenders. A violation of the restriction cuts to the core of this state interest and undermines public safety. For each of these reasons, we do not believe a potential two-year penalty attached to a violation of the statute is disproportionate when "measuring the harshness of the penalty against the gravity of the offense." *Rubino*, 602 N.W.2d at 564.

## VIII. Conclusion.

We conclude Seering has suffered no deprivation of his federal or state constitutional rights related to substantive and procedural due process, ex post facto laws, self-incrimination, or cruel and unusual punishment. We also observe that the United States Eighth Circuit Court of Appeals recently rejected similar challenges to section 692A.2A under the Constitution of the United States. *See Doe*, 405 F.3d at 723. This opinion is consistent with our

approach and supports the conclusion we reach today. We reverse and remand this case for further proceedings consistent with this opinion.

## REVERSED AND REMANDED.

All justices concur except WIGGINS, J., and LAVORATO, C.J., who concur specially in part and dissent in part.

WIGGINS, Justice (concurring in part and dissenting in part).

I agree with the majority's conclusions regarding the issues Seering preserved for appeal, except I would find Iowa Code section 692A.2A (2003) violates the Ex Post Facto clauses of the United States and Iowa Constitutions.

In order to determine whether section 692A.2A violates the Ex Post Facto clauses, we must first ascertain the intent of the legislature when it enacted the law. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146–47, 155 L.Ed.2d 164, 176 (2003). If the legislature intended to establish a statutory scheme that is civil and non-punitive, the statute is not subject to the Ex Post Facto clauses. *Id.* I agree with the majority the intent of the legislature in enacting section 692A.2A was to create a civil, non-punitive statutory scheme for the protection of the public. Our inquiry, however, does not end with this finding.

If we find the purpose of the statute is non-punitive, we must then determine whether the statutory scheme either in purpose or effect is so punitive that it negates the State's objective to be considered as a civil limitation. *Id.* As the majority notes, we are required to analyze the five factors annunciated by the Supreme Court in *Smith* to make that determination. I dissent because my analysis of the five factors leads me to conclude section 692A.2A in purpose and effect is so puni-

tive that it negates the State's objective to be considered as a civil limitation.

1. *Has a law that restricts a person's residency been historically and traditionally considered to be punishment?*

The majority concedes our society has historically considered banishment as punishment. Yet, it concludes individuals subject to section 692A.2A's residency requirements are not banished from a community but only restricted from residing in a particular area.

In discussing this factor in connection with an Alaskan sex offender law that required only registration, the Supreme Court stated:

> Some colonial punishments indeed were meant to inflict public disgrace. Humiliated offenders were required "to stand in public with signs cataloging their offenses." At times the labeling would be permanent: A murderer might be branded with a "M," and a thief with a "T." The aim was to make these offenders suffer "permanent stigmas, which in effect cast the person out of the community." The most serious offenders were banished, after which they could neither return to their original community nor, reputation tarnished, be admitted easily into a new one.

*Id.* at 97–98, 123 S.Ct. at 1150, 155 L.Ed.2d at 180 (citations omitted). *Smith* went on to hold registration in and of itself is not banishment. *Id.* at 99, 123 S.Ct. at 1150–51, 155 L.Ed.2d at 181.

Section 692A.2A goes further than just requiring a sex offender to register. It prevents an individual from living within two-thousand feet of an elementary or secondary school or childcare center. Iowa Code § 692A.2A(2) (2003). The residency restriction imposes an onerous and intrusive obligation on a convicted sex offender,

results in community ostracism, and marks the offender as a person who should be shunned by society. Accordingly, I would hold section 692A.2A effectively banishes an offender from a community. Therefore, this factor weighs in favor of finding section 692A.2A as being punitive.

### 2. Does section 692A.2A promote the traditional goals of punishment?

The residency restrictions of section 692A.2A are comparable to conditions of supervised release or parole. The dual purpose of a supervised release or parole is to (1) restrict and monitor the freedom of the offender and (2) act as a deterrent. The majority labels the deterrent and retribution effects as secondary and consistent with the regulatory objective of the residency requirement. Even if these effects are secondary and consistent with the regulatory objective, it still amounts to deterrence and retribution promoting the traditional aims of punishment. For this reason, I would find this factor weighs in favor of finding section 692A.2A promotes the traditional goals of punishment.

### 3. Does section 692A.2A impose an affirmative disability or restraint?

The majority acknowledges that section 692A.2A imposes an affirmative disability or restraint. Yet, it minimizes this factor because "the disabling nature of the statute is not absolute." When a residency restriction does not allow a family to live within walking distance of its local school, I would find the restriction imposes an affirmative disability or restraint.

### 4. Does section 692A.2A have a rational connection to a non-punitive purpose?

I agree with the majority the residency requirement has a rational connection to the purpose of protecting the public.

### 5. Is section 692A.2A excessive with respect to the non-punitive purpose?

Although there is a rational connection to a non-punitive purpose, I do believe it is excessive. Section 692A.2A limits the residency of "a person who has committed a criminal offense against a minor, or an aggravated offense, sexually violent offense, or other relevant offense that involved a minor." Iowa Code § 692A.2A(1). It applies equally to a person convicted of admitting a minor to a premise where obscene material is exhibited in violation of section 728.3 and to a person convicted of first degree sexual abuse in violation of section 709.2. *Id.* §§ 692A.1(1)(*a*), 692A.1(5)(*k*). Section 692A.2A fails to consider the seriousness of the crime, the relationship between the victim and the offender, or the risk of re-offending. By punishing all these offenders with a residency requirement without considering whether a particular offender is a danger to the general public, exceeds the non-punitive purpose of the statute. This is especially true because a sex offender is subject to the residency restrictions for the rest of the sex offender's life.

Consequently, my analysis of four of the five factors requires me to find the purpose and effect of section 692A.2A is so punitive that it negates the legislature's objective to be considered as a civil limitation. Therefore, I would affirm the district court's ruling.

LAVORATO, C.J., joins this special concurrence in part and dissent in part.