# IN THE SUPREME COURT OF IOWA

No. 12–0024

Filed February 14, 2014

**STATE OF IOWA,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR STORY COUNTY,**

Defendant.

On review from the Iowa Court of Appeals.

Certiorari to the Iowa District Court for Story County, Timothy J. Finn, Judge.

The district court determined a sex offender was eligible for modification of his offender registration obligation. The State filed a petition for writ of certiorari. **WRIT ANNULLED.**

Thomas J. Miller, Attorney General, and John R. Lundquist, Assistant Attorney General, for plaintiff.

Andrew J. Boettger of Hastings, Gartin & Boettger, LLP, Ames, for defendant.

**HECHT, Justice.**

An individual convicted of a sex offense sought modification of his sex offender registration obligation. After determining the individual met the requirements of the statutory registration modification provision, the district court granted modification and ordered the individual removed from the offender registry. The State filed a petition for writ of certiorari, contending the district court erred in determining the individual was eligible for modification under the provision. We granted the petition and transferred the case to the court of appeals. On further review of the decision of the court of appeals, we annul the writ.

## I. Background Facts and Proceedings.

David Buchwald was eighteen years old when he pleaded guilty to a single count of lascivious acts with a child in February 2002. Buchwald was sentenced and incarcerated as an adult. Upon his release from prison in April 2004, Buchwald was required to register as a sex offender for ten years under the then-existing version of Iowa's sex offender registry statute. He registered and remained on the registry without incident until he petitioned for modification of his requirement in February 2011.

Iowa's legislature amended the registry statute significantly in 2009 and added a provision under which persons subject to registration requirements may petition the district court for modification. *See* Iowa Code § 692A.128 (Supp. 2009). The provision grants the district court authority to modify registration obligations if certain conditions are met. *Id.* The relevant subsections provide:

> 1. A sex offender who is on probation, parole, work release, special sentence, or any other type of conditional release may file an application in district court seeking to modify the registration requirements under this chapter.

2. An application shall not be granted unless all of the following apply:

*a.* The date of the commencement of the requirement to register occurred at least two years prior to the filing of the application for a tier I offender and five years prior to the filing of the application for a tier II or III offender.

*b.* The sex offender has successfully completed all sex offender treatment programs that have been required.

*c.* A risk assessment has been completed and the sex offender was classified as a low risk to reoffend. The risk assessment used to assess an offender as a low risk to reoffend shall be a validated risk assessment approved by the department of corrections.

*d.* The sex offender is not incarcerated when the application is filed.

*e.* The director of the judicial district department of correctional services supervising the sex offender, or the director's designee, stipulates to the modification, and a certified copy of the stipulation is attached to the application.

. . . .

5. The court may, but is not required to, conduct a hearing on the application to hear any evidence deemed appropriate by the court. The court may modify the registration requirements under this chapter.

6. A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense, the offender is not under the supervision of the juvenile court or a judicial district judicial department of correctional services, and the department of corrections agrees to perform a risk assessment on the sex offender. However, all other provisions of this section not in conflict with this subsection shall apply to the application prior to an application being granted except that the sex offender is not required to obtain a stipulation from the director of a judicial district department of correctional services, or the director's designee.

. . . .

*Id.*

Before the 2009 amendments, the registry statute had no similar modification provision—instead, persons on the registry could seek only determinations of "whether the offense for which the person ha[d] been convicted require[d] the person to register," and "whether the period of time during which the person [was] obligated to register . . . [had] expired." *See id.* § 692A.8 (2009).

In his 2011 petition, Buchwald invoked the new modification provision and alleged he met or could meet each of the provision's prerequisites for adjustment of his obligation. More specifically, he noted he was not incarcerated or under any other probationary oversight at the time, he had been classified as a tier II offender and had been on the registry for more than five years, and he had not been ordered to undergo any sex offender treatment program. Because the provision also requires a risk assessment classifying an offender as low risk to reoffend as a prerequisite for modification, Buchwald requested an assessment, which the district court ordered.

Initially, Buchwald relied on subsection 6 of section 692A.128 as the basis for his eligibility for modification. *See id.* § 692A.128(6) (2011) ("A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense . . . ."). When the district court ordered the risk assessment based on Buchwald's petition, the State urged reconsideration of the order on behalf of the department of correctional services (the department), contending the legislature's use of the word "adjudication" in subsection 6 indicates the subsection applies only to individuals subject to the registry as a result of juvenile adjudications. Under that reading, the State maintained, Buchwald's conviction as an adult rendered him ineligible for modification under subsection 6. The district

court held a hearing on the State's motion, at which time Buchwald moved to amend his petition to "include consideration of Iowa Code section 692A.128 in its entirety" as the basis of his argument for eligibility.[1] After granting Buchwald's motion to amend, the district court denied the State's motion for reconsideration and ordered the risk assessment, agreeing subsection 6 "clearly applie[d] only to juveniles" but concluding subsections 2 and 5 granted the court discretion to modify registration requirements provided various statutory criteria were met. *See id.* § 692A.128(5) ("The court may modify the registration requirements under this chapter."); *see also id.* § 692A.128(2) (providing "[a]n application shall not be granted unless all of the following apply" and enumerating several conditions).

The State petitioned our court for a writ of certiorari and moved to stay the district court order, but we denied the petition and motion. The department then performed the risk assessment and determined Buchwald presented a low risk to reoffend. With the risk assessment completed, the district court held a new hearing on Buchwald's eligibility for modification, at which the parties reiterated their arguments. The district court, having previously addressed the arguments, concluded the assessment rendered Buchwald eligible for modification under subsection 1 and therefore reduced the duration of Buchwald's registration obligation to five years. Because five years had elapsed before Buchwald petitioned for modification, the district court ordered him removed from the registry.

---

[1]Buchwald also argued at the hearing any interpretation of the modification provision rendering him ineligible would violate his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution and under article I, section 6 (equal protection) and section 9 (due process) of the Iowa Constitution.

The State filed a new petition for writ of certiorari challenging the legality of the district court's modification and removal order, insisting Buchwald was ineligible for modification under subsection 6 and contending he was also ineligible under subsection 1 because he was no longer subject to any of the forms of corrections supervision set forth in subsection 1. *See id.* 692A.128(1) ("A sex offender who is on probation, parole, work release, special sentence, or any other type of conditional release may file an application in district court seeking to modify the registration requirements under this chapter."). We granted the petition and transferred the case to the court of appeals.

As he had in the district court, Buchwald asserted at the court of appeals that an appropriate interpretation of the text of section 692A.128 allows for modification of his obligation, and that any contrary interpretation would violate his constitutional rights to due process and equal protection. The State argued Buchwald's eligibility for modification is explicitly foreclosed by the text of subsections 1 and 6 and added that his constitutional arguments are foreclosed by Iowa Supreme Court precedent. The court of appeals sustained the State's challenge, concluding Buchwald was not entitled to modification because subsection 1 of the statute, by its express terms, requires an offender be under one of the forms of corrections supervision listed. Further, the court of appeals explained, Buchwald's constitutional challenges were unpersuasive given our prior caselaw regarding the registry. Finally, the court of appeals declined to address the applicability of subsection 6, believing Buchwald had not raised on appeal his ineligibility under subsection 6. We granted Buchwald's application for further review of the court of appeals decision.

## II.  Scope of Review.

In certiorari cases we review for errors at law.  *State v. Iowa Dist. Ct.*, 812 N.W.2d 1, 2 (Iowa 2012).  We examine the jurisdiction of the district court and the legality of its actions, and we have said illegality exists when the court has improperly applied the law.  *Id.*  In certiorari cases alleging violation of a constitutional right, we review de novo the totality of the circumstances surrounding the challenged ruling on the constitutional right.  *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 517 (Iowa 2011).

## III.  Discussion.

The State relies on specific statutory language in subsections 1 and 6 to argue Buchwald was ineligible for modification.  Buchwald was ineligible for modification under subsection 1, the State contends, because the legislature's use of the present-tense phrase "is on" limits subsection 1's application to individuals currently subject to some form of corrections supervision, and Buchwald is no longer subject to any of the specified forms of supervision.  *See* Iowa Code § 692A.128(1) ("A sex offender *who is on* probation, parole, work release, special sentence, or any other type of conditional release may file an application [for modification] . . . ."  (Emphasis added.)).  The State suggests section 692A.128(2) adds further support for this interpretation by requiring that "[t]he director of the judicial district department of correctional services *supervising* the sex offender . . . stipulates to the modification . . . ."  *Id.* § 692A.128(2)(*e*) (emphasis added).  This reading is consistent with the purpose of the statute, the State maintains, because the forms of ongoing corrections supervision listed can ensure a level of public protection comparable to the protection provided by the registry.

An interpretation of subsection 1 encompassing individuals not currently subject to some kind of supervision, the State adds, would render superfluous subsection 6, which allows individuals "not under the supervision of the juvenile court or a judicial district judicial department of correctional services," to petition for modification. *Id.* § 692A.128(6). As noted, the State insists the use of the word "adjudication" in subsection 6 indicates the subsection applies only to individuals subject to the registry as a result of juvenile adjudications. *Id.* ("A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense . . . ."). The State suggests its reading of subsection 6 necessarily constrains our interpretation of subsection 1. There would be no need for subsection 6, the State maintains, if subsection 1 were applicable to individuals not currently subject to correctional supervision, because that population would include the population of former juvenile offenders meeting the conditions of subsection 6.

Buchwald's argument on appeal highlights the ambiguity in the language of the modification provision as a whole. He emphasizes the permissive phrasing of subsection 1, which establishes an offender under corrections supervision "may file an application" for modification. *Id.* § 692A.128(1). That language, he suggests, says nothing to preclude individuals who have completed required periods of corrections supervision from petitioning, and the language should be read to grant these individuals an opportunity for modification. Buchwald also contests the State's claim that subsection 6 renders eligible only those juvenile offenders no longer subject to corrections supervision. Examined in its entirety, Buchwald contends, the modification provision grants him an opportunity to petition for modification. His interpretation

is consistent with the statute's public safety purpose, he insists, because individuals in his position, having completed their corrections obligations and satisfied the risk assessment and other statutory prerequisites, fall squarely within the class the statute is designed to make eligible. Any contrary interpretation, he argues, would violate his rights to equal protection and procedural and substantive due process.

We have not yet had occasion to interpret the modification provision. We have often explained we avoid assessing isolated words and phrases when construing statutory provisions. *See, e.g., In re Estate of Melby*, 841 N.W.2d 867, 879 (Iowa 2014). In interpreting provisions of the prior version of the registration enactment lacking relevant statutory definitions, we have examined the statutory structure and considered the contexts in which words are used in construing provisions in a manner best achieving the statutory purpose. *See, e.g.*, *In re S.M.M.*, 558 N.W.2d 405, 407–08 (Iowa 1997). We have explained the purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public. *See State v. Seering*, 701 N.W.2d 655, 667 (Iowa 2005); *S.M.M.*, 558 N.W.2d at 408.

Because we conclude an appropriate interpretation of subsection 6 resolves the parties' dispute here, we address only the parties' arguments confronting that provision. The State's argument regarding the use of "adjudication" instead of "conviction" in subsection 6 is superficially sound. The legislature has employed the concept of adjudication in select provisions in the amended registry statute to refer very clearly to individuals having committed crimes as juveniles. *See, e.g.*, Iowa Code § 692A.101(7) (defining "convicted" broadly to include adult and juvenile offenders and referring to juveniles as having been "adjudicated

delinquent"); *id.* § 692A.103(3) (setting forth registration requirements for individuals "adjudicated delinquent"); *cf. id.* § 692A.125(4) (addressing statute's retroactivity and employing both "conviction" and "adjudication" without making reference to juvenile or adult status). A closer reading of the language of subsection 6, however, coupled with a closer examination of the modification provision and the registration statute, compels us to conclude subsection 6 renders Buchwald eligible for modification.[2]

Subsection 6 grants any "sex offender" required to be on the registry "as a result of an adjudication for a sex offense" an opportunity for modification, provided the individual is no longer under juvenile court or correctional supervision and the department of corrections agrees to perform a risk assessment. *Id.* § 692A.128(6). The statute defines sex offender broadly to include any "person who is required to be registered under [the statute]." *Id.* § 692A.101(26). Similarly, the statute defines sex offense broadly, to include any "indictable offense for which a conviction has been entered that is enumerated in section 692A.102, . . . [or] any comparable offense . . . under prior law, or any comparable offense . . . in [another jurisdiction]." *Id.* § 692A.101(27). Those definitions appear to do little to limit the applicability of subsection 6. Against the backdrop of those definitions, however, the provision in subsection 6 limiting modification relief to only those offenders no longer

---

[2]We note the legislature's inclusion of a separate juvenile modification provision in section 692A.103. *See* Iowa Code § 692A.103(5) (2011). That section provides a "juvenile court may, upon motion of the juvenile, and after reasonable notice to the parties and hearing, modify or suspend the registration requirements if good cause is shown." *Id.* The provision requires, however, the motion "be made and the hearing shall occur prior to the discharge of the juvenile from the jurisdiction of the juvenile court." *Id.* § 692A.103(5)(*a*). The provision's requirement that an offender is currently subject to juvenile court supervision therefore clearly contrasts with the requirement in subsection 6 that an offender is not subject to juvenile court supervision. The provision does not, however, resolve the question of the effect of the additional requirement in subsection 6 that an offender is not subject to correctional services supervision.

under correctional or juvenile court supervision is a natural complement to subsection 1. Subsection 1 applies broadly to those offenders currently subject to corrections supervision, while subsection 6 applies broadly to those offenders no longer subject to supervision. *See* 4 Robert R. Rigg, *Iowa Practice Series: Criminal Law* § 6:95, at 298 (2013) (noting individuals not under supervision but still subject to the registry are eligible for modification under subsection 6).

A reading of subsections 1 and 6 in tandem is bolstered by additional interpretive evidence. We find the use of "adjudication" in subsection 6 as distinct from "adjudicated delinquent" or "adjudication of delinquency" particularly instructive in this context. Our legislature has employed some form of the word "adjudicated" in numerous provisions in our registration statute. In the vast majority of those instances, the use is linked very clearly with juvenile status by one or more of the words "delinquent," "delinquency," or "juvenile." *See* Iowa Code § 692A.101(7) (" 'Convicted' means . . . *adjudicated delinquent* for an act which is an indictable offense in this state . . . including but not limited to a *juvenile* who has been *adjudicated delinquent* . . . ." (Emphasis added.)); *id.* § 692A.103(1)(*d*) (noting offender must register "from the date an *adjudicated delinquent* is released from placement in a *juvenile* facility" (emphasis added)); *id.* § 692A.103(1)(*e*) (noting offender must register "from the date an *adjudicated delinquent* commences attendance as a student" (emphasis added)); *id.* § 692A.103(3) ("A *juvenile adjudicated delinquent* . . . shall be required to register . . . unless the *juvenile* court waives the requirement . . . ." (Emphasis added.)); *id.* § 692A.103(4) ("[A] *juvenile* [fourteen or older at the time of offense] shall be required to register if the *adjudication* was for [certain offenses] . . . . At the time of *adjudication* the judge shall make a determination . . . ." (Emphasis

added.)); *id.* § 692A.103(5)(*e*) ("This subsection does not apply to a *juvenile* fourteen years of age or older at the time the offense was committed if the *adjudication* was for [certain offenses]." (Emphasis added.)).

In two of the remaining instances, our legislature has not explicitly linked the concept of adjudication with juvenile status, but has, in the very same clause, juxtaposed "adjudication" with a use of "conviction." *See id.* § 692A.125(4) ("[E]ach *conviction or adjudication* for a sex offense requiring registration, regardless of [when] such *conviction or adjudication* occurred . . . , shall be included in determining the tier requirements pursuant to this chapter." (Emphasis added.)). *But cf. id.* § 692A.116(2) ("Application . . . shall be made on forms . . . and accompanied by copies of *sentencing or adjudicatory* orders with respect to each offense . . . ." (Emphasis added.)).

In the only other instances we have found in which a form of "adjudication" appears in the statute, our legislature has notably employed it more broadly to mean something other than "adjudicated delinquent." The statute's definition of criminal or juvenile justice agency, for example, refers to "an agency or department . . . which performs as its principal function the apprehension, prosecution, *adjudication,* incarceration, or rehabilitation of criminal or juvenile offenders." *Id.* § 692A.101(8) (emphasis added). This definition very clearly sets forth five distinct functions—one of which is adjudication—entities perform in our justice system, and is structured to indicate (1) both criminal and juvenile agencies may perform any of the five functions and (2) both criminal and juvenile offenders may be subject to any of the five functions.

In much the same way, the statute employs "adjudication" to refer to individuals of both adult and juvenile status in providing "convicted," for purposes of the statute, does not include "a plea, sentence, *adjudication,* deferred sentence, or deferred judgment which has been reversed or otherwise set aside." *Id.* § 692A.101(7) (emphasis added). We think it unlikely the definition's use of "adjudication" for purposes of exemption distinguishes adults having had convictions or adjudications set aside from juveniles having had adjudications set aside. Instead, it constitutes another clear use of "adjudication" referring to both adult and juvenile status, and another use distinct from those instances clearly linking adjudication with the word "delinquent," "delinquency," or "juvenile."

Turning to subsection 6, we note "adjudication" has not been linked with the concept of "delinquency" as it has been elsewhere to signify specifically juvenile status, and has not been contrasted with a use of the word "conviction," as it has been elsewhere to signify specifically juvenile status. While subsection 6 does make reference to "the supervision of the juvenile court," it also refers, in the same disjunctive clause, to "a judicial district judicial department of correctional services"—a reference which, for most purposes, will signify adult status. *See id.* § 692A.128(6). Given the absence in subsection 6 of the linguistic cues employed elsewhere to suggest adjudication's limitation to juvenile status, we conclude the registration chapter's uses of "adjudication" referring to both adult and juvenile status must guide our reading of "adjudication" in subsection 6.

Our interpretation of "adjudication" in subsection 6 pertaining to both juvenile and adult offenders is consistent with both the plain meaning of the term and its use elsewhere in the Code. *See Black's Law*

*Dictionary* 47 (9th ed. 2009) (defining adjudication as "the process of judicially deciding a case" and making no distinction between adult and juvenile proceedings); *see also* Iowa Code § 907.1(1) (making no reference to limitation to juveniles in defining "deferred judgment" as "a sentencing option whereby both the *adjudication* of guilt and the imposition of a sentence are deferred by the court" (emphasis added)); *accord* Fed. R. Civ. P. 23(b) (employing "adjudication" in establishing standards for class action certification and making no distinction between adult and juvenile status); *Doe v. Miller*, 216 F.R.D. 462, 467, 471 (S.D. Iowa 2003) (examining constitutional challenges to prior version of registration statute and certifying plaintiff and defendant classes based on "enormous" risk of "inconsistent adjudications" as individuals, while making no distinction between adult and juvenile status). This usage evidence favors an interpretation of subsection 6 granting modification eligibility to those individuals satisfying the various prerequisites of subsection 6 and the modification provision without limiting its reach to juvenile offenders.

In determining the meaning of adjudication in subsection 6, we have also considered the *2009 Summary of Legislation* produced by Iowa's Legislative Services Agency (LSA). The LSA explains these postenactment summaries are intended to "generally inform[]" interested individuals and provide "quick reference" to legislation. *See* Legislative Services Agency, *2009 Summary of Legislation*, at i (Iowa 2009), available at https://www.legis.iowa.gov/docs/shelves/summaries/Summary%20 of%20Legislation%202009.pdf [hereinafter *2009 Summary*]. The LSA summary addresses the registration statute generally and nonexhaustively in two separate chapters—one entitled "Children and Youth," and one entitled "Criminal Law, Procedure, and Corrections."

*See id.* at 69, 87. In the chapter on children and youth, the summary likely makes reference to section 692A.128(6) in suggesting the statute "permits an offender required to register as a juvenile who is no longer under supervision to apply for a modification . . . if the Department of Corrections agrees to perform a risk assessment . . . ." *Id.* at 69. The summary in that chapter makes no reference to the possibility of adult eligibility under subsection 1 or subsection 6, presumably because the LSA determined adult eligibility had no relevance to its chapter regarding legislation affecting children and youth. In its criminal law chapter, the LSA likely makes reference to section 692A.128(1) in suggesting the modification provision "permits an offender on probation or parole to file [a modification application] in district court . . . ." *Id.* at 95. The summary makes no reference, however, to the eligibility of those offenders on work release, special sentence, or any other type of conditional release—individuals explicitly granted eligibility under subsection 1.

The criminal law chapter in the LSA summary also likely makes reference to section 692A.128(6) in generally explaining the "division provides that an offender required to register as a juvenile who is no longer under supervision may apply for modification . . . ." *2009 Summary*, at 95. That section of the summary gives no indication, however, of whether any other individuals might be eligible for modification, or alternatively and perhaps more importantly, whether any specific classes of individuals might be precluded from petitioning. Given the general and plainly nonexhaustive treatment of the registration legislation in both the children and youth chapter and the criminal law chapter, we are unable to derive helpful interpretive guidance from the LSA summary.

Instead, in addition to the usage evidence we have examined, our repeated identification of the registration statute's purpose of public protection guides our interpretation of subsection 6. *See, e.g., State v. Willard*, 756 N.W.2d 207, 212 (Iowa 2008); *Seering*, 701 N.W.2d at 667; *S.M.M.*, 558 N.W.2d at 408. The modification provision includes various safeguards promoting this purpose: offenders must have completed all sex offender treatment programs that have been required; offenders must have completed a risk assessment and have been classified as low risk to reoffend; the district court may gather "any evidence deemed appropriate" to its determination and conduct a hearing on any application; and, for purposes of subsection 6, offenders must have completed any required periods of juvenile court and judicial district corrections supervision. An interpretation of subsection 6 rendering individuals in Buchwald's position eligible for modification only after having satisfied each of those requirements balances the registry's protective purpose with our legislature's related recognition—in enacting the modification provision—of an individual's interest in removal from the registry when appropriate. The interpretation favored by the State could, as Buchwald has argued, raise questions as to whether a distinction between individuals subject to corrections supervision and individuals no longer subject to supervision comports with relevant constitutional principles. The doctrine of constitutional avoidance suggests the proper course in the construction of a statute may be to steer clear of "constitutional shoals" when possible. *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 74 (Iowa 2010). Our interpretation of subsection 6 is consistent with our general preference for avoiding constitutional adjudication where possible.

Based on the language of subsection 6, the structure of the modification provision, the interpretive guidance from elsewhere in the registration statute, and the statute's purpose, we conclude subsection 6 grants modification eligibility to those individuals no longer subject to corrections supervision who have satisfied the modification provision's various prerequisites. Although we conclude the district court's interpretation of subsection 6 was incorrect, we find no illegality in the district court's determination Buchwald was eligible for modification of his registration requirement or the order removing Buchwald from the registry. Accordingly, we annul the writ.

**IV. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals and annul the writ.

**WRIT ANNULLED.**

All justices concur except Mansfield, J., who dissents.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent and would affirm the well-reasoned decision of the court of appeals.  I think Buchwald is not eligible for relief under *either* section 692A.128(1) *or* 692A.128(6), the latter of which is limited to juvenile adjudications.  *See* Iowa Code § 692A.128(1), (6) (2011).

Section 692A.128 creates two basic avenues for modification—subsection 1 and subsection 6.  Subsection 1 is potentially available when the sex offender is "on probation, parole, work release, special sentence, or any other type of conditional release."  *Id.* § 692A.128(1). Subsection 6 is potentially available when the sex offender is on the registry "as a result of an adjudication for a sex offense, the offender is not under the supervision of the juvenile court or a judicial district judicial department of correctional services, and the department of corrections agrees to perform a risk assessment on the sex offender."  *Id.* § 692A.128(6).

In this case, the applicant, David Buchwald, is no longer on probation, parole, work release, special release, or any other type of conditional release.  It is also undisputed that Buchwald is not on the registry because of a juvenile adjudication.  Rather, he was convicted of the sex offense of lascivious acts with a child when he was over the age of majority.

Over the State's objection, the district court granted Buchwald's request to modify registration requirements.  The district court agreed with the State that subsection 6 "quite clearly applies only to juvenile offenders."  However, it found it had authority to grant modification under subsection 1.

We granted the State's petition for certiorari and transferred the case to the court of appeals. That court ruled, I believe correctly, that Buchwald could not obtain modification of his registration requirements. It observed that subsection 1 "is written in the present tense. By its terms, modification under this subsection is only available to sex offenders who are on some type of conditional release at the time they apply for a modification." I agree.

The court of appeals also overruled Buchwald's argument that it would be unconstitutional to preclude "off paper" adult sex offenders like him from seeking modification of their registration requirements. In doing so, the court cited precedent from our court upholding the severe pre-2009 residency restrictions on sex offenders under the rational basis test. *See State v. Seering*, 701 N.W.2d 655, 665–66 (Iowa 2005); *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216–17 (Iowa 2008).

In a footnote, the court of appeals declined to consider subsection 6, noting that the district court had rejected that argument and Buchwald had not asserted it on appeal.

This led to Buchwald's application for further review in this court. In his application, Buchwald raised only subsection 1 and his constitutional arguments. He did not bring his subsection 6 argument to our attention, just as he did not mention it in his original appellate brief.

Now, however, my colleagues resurrect subsection 6.[3] They assert that "adjudication" in section 692A.128(6) includes criminal convictions

---

[3]To be clear, I am not arguing my colleagues are doing anything improper in reaching subsection 6. The situation here is identical to that in *King v. State*, 818 N.W.2d 1 (Iowa 2012). We are affirming the district court on a ground that was raised below and rejected by that court, and that the appellee then chose not to brief on appeal. *See id.* at 11–12 (noting that "[a]ppellants and appellees stand in different positions"). Because the parties argued the point below, fairness is assured and we

and is not limited to juvenile adjudications. Accordingly, they find that Buchwald may modify his registration requirements. I think this is the wrong reading of the statute for several reasons.

To begin with, my colleagues cite no examples—none—in chapter 692A where the word "adjudication" has been used to include criminal convictions. To the contrary, time and again, when the terms "adjudicated," "adjudication," or "adjudicatory" appear elsewhere in chapter 692A, they refer to juvenile adjudications of delinquency. *See, e.g.*, Iowa Code §§ 692A.101(7), .103(1)(*d*), .103(1)(*e*), .103(3), .103(4), .103(5)(*e*), .116(2), .125(4). In each of the foregoing instances, one of two things is true. Either the word "adjudicated" is accompanied by the word "delinquent" or the word "juvenile," *see, e.g.*, *id.* §§ 692A.101(7), .103(1)(*d*), .103(1)(*e*), .103(3), .103(4), .103(5)(*e*), or the legislature has juxtaposed the word "adjudication" or "adjudicatory" with the word "conviction" or "sentencing" and put the word "*or*" in between, thus indicating that an adjudication for purposes of chapter 692A is something different from what occurs in a criminal proceeding, *see, e.g.*, *id.* §§ 692A.116(2), .125(4).

Furthermore, "convicted"—as defined in chapter 692A—includes anyone who is "found guilty of, pleads guilty to, or is sentenced or adjudicated delinquent for an act which is an indictable offense." *See id.* § 692A.101(7). This further demonstrates that when it drafted chapter 692A in 2009, the legislature intended adjudication to mean something narrower than a criminal conviction—not the other way around.[4]

have discretion to reach an argument even though the appellee didn't brief it to us. *See id.*

[4]My colleagues assert that section 692A.101(8) supports their position because "adjudication" as used there means "something other than" an adjudication of delinquency. That section provides:

In addition, the June 2009 Summary of Legislation prepared by the Legislative Services Agency (LSA) at the end of the legislative session speaks to the intended scope of subsection 6. It states, "The Act also permits an offender required to register as a juvenile who is no longer under supervision to apply for a modification of the registry requirements if the Department of Corrections agrees to perform a risk assessment on the sex offender." *See* Legislative Services Agency, *2009 Summary of Legislation*, at 69 (Iowa 2009), *available at* https://www.legis.iowa.gov/ docs/shelves/Summaries/Summary%20of%20Legislation%202009.pdf. The LSA further explains:

> MODIFICATION. The division permits an offender on probation or parole to file an application in district court seeking to modify the registration requirements. The court may modify the registration requirements if all of the following apply: the date of commencement of the requirement to register occurred at least two years prior to the filing of the application for a tier I offender, or five years for a tier II or tier III offender; the offender has successfully completed all sex offender treatment programs that have been required; a risk assessment has been completed and the offender has been classified as a low risk to reoffend; the offender is not incarcerated at the time the application is filed; and the director or the director's designee of the district department supervising the offender stipulates to the modification. The court may, but is not required to, conduct a hearing on the application to hear any evidence deemed

---

"*Criminal or juvenile justice agency*" means an agency or department of any level of government or an entity wholly owned, financed, or controlled by one or more such agencies or departments which performs as its principal function the apprehension, prosecution, adjudication, incarceration, or rehabilitation of criminal or juvenile offenders.

Iowa Code § 692A.101(8) (2011).

I confess to some uncertainty about the meaning of this definition, which appears to be taken verbatim from chapter 692. *See id.* § 692.1(7). However, for my colleagues' point about subsection 692A.101(8) to have any force, they need to explain *what they think that subsection means*. Is a court a "criminal or juvenile justice agency"? If so, then this may be one instance—the only one—where "adjudication" in chapter 692A includes a criminal conviction. However, my colleagues appear unwilling to reach this conclusion.

> appropriate by the court prior to making a determination as to modification.
>
> The division provides that an offender required to register as a juvenile who is no longer under supervision may apply for modification of the registration requirements if the Department of Corrections agrees to perform a risk assessment on the offender. All other provisions relating to a modification shall apply to such an application for a modification except that the offender is not required to obtain a stipulation from the director or the director's designee of the district department of correctional services.

*Id.* at 95. Although this publication was prepared by LSA, and is not part of the legislation itself, it "generally informs persons of the contents" of legislation and supports my view that the legislature intended to limit subsection 6 to juvenile adjudications. *Id.* at i.

Furthermore, as the State points out, reading the term "adjudication" to include *both* criminal convictions *and* juvenile adjudications would render this very language superfluous. The subsection begins, "A sex offender may be granted a modification if the offender is required to be on the sex offender registry as a result of an adjudication for a sex offense . . . ." Iowa Code § 692A.128(6). However, if all "individuals no longer subject to corrections supervision who have satisfied the modification provision's various prerequisites" are eligible, as the majority holds, the entire phrase "as a result of an adjudication for a sex offense" becomes unnecessary. In contrast, if the legislature's use of adjudication was intended to refer only to *juvenile* adjudications, as in other sections of the chapter, the choice of language in subsection 6 has a purpose—to narrow its applicability from all sex offenders required to register under the statute, to only those required to do so as a result of a juvenile adjudication. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 520 (Iowa 2012) ("In interpreting a statute, each term is to be given effect, and we will not read a statute so that any provision will

be rendered superfluous." (Citations and internal quotation marks omitted.)).[5]

I concede that if you go far afield, you can find examples of the word "adjudication" covering things other than juvenile adjudications, for example, in the federal class action rule. *See* Fed. R. Civ. P. 23(b). The problem with this is that we are supposed to refer to "similar statutes"—not unrelated ones—in interpreting an undefined term in a statute. *See Schaefer v. Putnam*, 841 N.W.2d 68, 78 (Iowa 2013). Also, statutes are supposed to be interpreted as an integrated whole, *see State v. Adams*, 810 N.W.2d 365, 377 (Iowa 2012), and we are dealing with a chapter (692A) that was enacted as a single package by the legislature in 2009. *See* 2009 Iowa Acts ch. 119. I think chapter 692A's usage is consistent, and the legislature's intent is clear.

Turning to Buchwald's constitutional arguments, I agree with the court of appeals that they are essentially foreclosed by our prior caselaw. The legislature's policy choice in section 692A, while perhaps not my policy choice, was to allow modifications of sex offender registry status to be sought only by (1) offenders who are under current supervision and (2) persons who had committed their offenses as juveniles and have completed their supervision (assuming the offense was not serious

---

[5]I note that subsection 6 applies when the previously adjudicated offender is "not under the supervision of the juvenile court *or a judicial district judicial department of correctional services*." Iowa Code § 692A.128(6) (emphasis added). Normally juveniles who have been adjudicated delinquent would not be under the supervision of a judicial district judicial department of correctional services *for that offense*. However, a juvenile who was adjudicated delinquent for a sex offense could subsequently be under correctional services supervision for a non-sex-related offense. Such a person would be able to seek modification under subsection 1, and upon completion of that supervision would be able to seek modification under subsection 6. The point remains: Reading "an adjudication" in subsection 6 as meaning "a juvenile adjudication" gives effect to all the statutory language, whereas reading it to include criminal convictions does not.

enough to warrant the juvenile being tried as an adult).[6] This policy meets the rational basis test because it limits modifications to those who are currently under some form of supervision or who may be less culpable and more capable of change because they committed their sex offenses as juveniles and were tried for those offenses as juveniles.

For the foregoing reasons, I respectfully dissent.

---

[6]As noted by my colleagues, a separate provision in chapter 692A allows juveniles who are currently under the supervision of the juvenile court to seek modification of their registration status. *See* Iowa Code § 692A.103(5).