**STATE of Iowa, Plaintiff–Appellee,**

v.

**Reginald Henry SALLIS, Defendant–Appellant.**

No. 08–0088.

Court of Appeals of Iowa.

July 22, 2009.

Mark C. Smith, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, Ralph Potter, County Attorney, and Christine O. Corken, Assistant County Attorney, for appellee.

Considered by MAHAN, P.J., and MILLER and DOYLE, JJ.

MILLER, J.

Reginald Sallis was convicted of third-degree sexual abuse and sentenced to ten years in prison and a special life sentence pursuant to Iowa Code section 903B.1 (Supp. 2005). He appeals, asserting ineffective-assistance-of-counsel claims. Because we find Sallis's counsel was not ineffective, we affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS.

On February 9, 2006, Sallis entered an Alford[1] plea to the charge of third-degree sexual abuse in violation of Iowa Code section 709.4(1) (2005) and was sentenced to ten years in prison.[2] On December 14,

---

1. See North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 171 (1970).

2. Sallis also entered an Alford plea to third-degree kidnapping in violation of Iowa Code sections 710.1 and 710.4. The district court sentenced him to ten years in prison on this conviction, which was ordered to be served consecutively to the ten years in prison for the third-degree sexual abuse conviction and concurrently to a sentence in Black Hawk County.

2007, following a hearing, the district court resentenced Sallis to include a special life sentence pursuant to Iowa Code section 903B.1 (Supp. 2005).[3] This section provides:

> A person convicted of a class "C" felony or greater offense under chapter 709, or a class "C" felony under section 728.12, shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

Iowa Code § 903B.1.

Sallis appeals and asserts that his counsel was ineffective for failing to object to the imposition of the section 903B.1 sentence because it is unconstitutional. He argues that Iowa Code section 903B.1 violates: (1) the equal protection clauses of the United States and Iowa Constitutions; (2) the separation of powers doctrine of the Iowa Constitution; (3) the due process clauses of the United States and Iowa Constitutions; and (4) the prohibition against cruel and unusual punishment of the United States Constitution.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

We review ineffective-assistance-of-counsel claims de novo. *State v. Martin,* 704 N.W.2d 665, 668 (Iowa 2005). To prevail on an ineffective assistance of counsel claim, Sallis must show by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Lane,* 726 N.W.2d 371, 393 (Iowa 2007). While we often preserve ineffective-assistance-of-counsel claims for postconviction proceedings, we consider such claims on direct appeal if the record is sufficient. *State v. Tate,* 710 N.W.2d 237, 240 (Iowa 2006). The record is sufficient to address Sallis's claims.

■ To prove that counsel breached an essential duty, a defendant must overcome a presumption that counsel was competent and show that counsel's performance was not within the range of normal competency. *State v. Buck,* 510 N.W.2d 850, 853 (Iowa 1994).

> Although counsel is not required to predict changes in the law, counsel must exercise reasonable diligence in deciding whether an issue is worth raising. In accord with these principles, we have

**3.** On September 11, 2006, the district court had entered a nunc pro tunc order adding a special life sentence pursuant to Iowa Code section 903B.1. Sallis appealed and this court vacated his sentence and remanded for resentencing. *State v. Sallis,* No. 06–1617, 2007 WL 1202567 (Iowa Ct.App. April 25, 2007).

held that counsel has no duty to raise an issue that has no merit. *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). To prove that prejudice resulted, a defendant must show there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001).

▮ Because counsel has no duty to raise a meritless issue, we will first determine whether Sallis's constitutional violation claims have any validity. *See Dudley*, 766 N.W.2d at 620. "If his constitutional challenges are meritorious, we will then consider whether reasonably competent counsel would have raised these issues and, if so, whether [Sallis] was prejudiced by his counsel's failure to do so." *Id.*

▮ Sallis asserts that his counsel was ineffective for failing to raise various constitutional challenges to Iowa Code section 903B.1. Statutes are cloaked with a presumption of constitutionality. *State v. Musser*, 721 N.W.2d 734, 741 (Iowa 2006); *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005). To overcome this presumption, Sallis must prove that section 903B.1 is unconstitutional beyond a reasonable doubt, which can only be accomplished by refuting "every reasonable basis upon which the statute could be found to be constitutional." *Seering*, 701 N.W.2d at 661 (citations omitted).

## A. Equal Protection and Separation of Powers

Sallis first claims that counsel rendered ineffective assistance by not urging that section 903B.1 violates the equal protection clauses of the United States and Iowa Constitution and the separation of powers doctrine of the Iowa Constitution. After Sallis appealed, our supreme court decided *State v. Wade*, 757 N.W.2d 618 (Iowa 2008), in which the same equal protection and separation of powers claims were examined and rejected in the context of Iowa Code section 903B.2. *See Wade*, 757 N.W.2d at 624, 627. We find *Wade* controlling as to the equal protection and separation of powers claims in the present case, and thus Sallis's claims regarding those provisions must fail. *See id.*

## B. Due Process

▮ Sallis next claims counsel rendered ineffective assistance by not urging that section 903B.1 violates his rights to both procedural and substantive due process. *See* U.S. Const. amend. XIV; Iowa Const. art. I, § 9.[4] First, we examine Sallis's procedural due process claim. "A person is entitled to procedural due process when state action threatens to deprive the person of a protected liberty interest." *Seering*, 701 N.W.2d at 665. Protected liberty interests have their source in the United States Constitution and "include such things as freedom from bodily restraint, the right to contract, the right to marry and raise children, and the right to worship according to the dictates of a person's conscience." *State v. Willard*, 756 N.W.2d 207, 214 (Iowa 2008). "We consider the type of process due and determine whether the procedures provided in the

---

4. The due process clauses of the United States and Iowa Constitutions are nearly identical in scope, import, and purpose. *State v. Hernandez–Lopez*, 639 N.W.2d 226, 237 (Iowa 2002). Sallis does not argue that we should utilize a different analysis under the Iowa Constitution. Therefore, our discussion of his due process argument applies to both his federal and state claims. *Dudley*, 766 N.W.2d at 624 (using the same analysis to interpret the due process clauses of the United States and Iowa Constitutions because neither party suggested the Iowa provision should be interpreted differently than its federal counterpart).

statute adequately comply with the process requirements." *State v. Hernandez-Lopez*, 639 N.W.2d 226, 240 (Iowa 2002).

In order to determine what process is due, we balance three factors: (1) the private interest that will be affected by government action; (2) the risk of an erroneous deprivation of this interest by the current procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest in the regulation, including the burdens imposed by additional or different procedures. *Seering*, 701 N.W.2d at 665; *Hernandez-Lopez*, 639 N.W.2d at 241. "At the very least, procedural due process requires notice and opportunity to be heard in a proceeding that is adequate to safeguard the right for which the constitutional protection is invoked." *Seering*, 701 N.W.2d at 665–66 (citations omitted). However, a particular procedure does not violate due process just because another method may seem fairer or wiser. *Id.* at 666.

Following Sallis's *Alford* plea and a sentencing hearing, the district court entered a judgment of conviction and imposed the section 903B.1 sentence. Sallis does not assert a procedural due process claim stemming from the imposition of the section 903B.1 sentence. Rather, he claims that if he violates the rules of parole and his release is revoked, the statute contemplates additional proceedings that are not specified. The State argues that because Sallis has not violated any terms of his parole, this issue is not ripe for review, and even if it were ripe "section 903B.1 specifically affords [the] defendant the procedural safeguards contained in Iowa Code chapters 901B, 905, 906, and 908, as well as 'rules adopted under those chapters for persons on parole.'"

"A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *Wade*, 757 N.W.2d at 627; *State v. Bullock*, 638 N.W.2d 728, 734 (Iowa 2002). The basic rationale for the ripeness doctrine is "to protect [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Bullock*, 638 N.W.2d at 734 (citations omitted). This rationale is especially applicable in the present case because "[t]o the extent there are consequences extending from a parole violation, such decisions are executive or administrative decisions." *Wade*, 757 N.W.2d at 628. Because Sallis's argument is based upon a possible future violation of parole and consequences from that violation, we conclude this issue is not ripe. *See id.* at 627–28 (holding that a constitutional challenge to Iowa Code section 903B.2 that was based upon future parole violations was not ripe).

Next, we examine Sallis's substantive due process claims. In a substantive due process examination, first we determine the "nature of the individual right involved." *Seering*, 701 N.W.2d at 662. If a fundamental right is involved, we apply strict scrutiny analysis. *Id.; see State v. Groves*, 742 N.W.2d 90, 93 (Iowa 2007) ("Strict scrutiny requires us to determine whether the statute is narrowly tailored to serve a compelling state interest."). "[O]nly fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty qualify for such protection." *Seering*, 701 N.W.2d at 664 (citations and quotations omitted). On the other hand, if a fundamental right is not involved, we apply a rational basis analysis. *Id.*

Sallis does not indicate whether he believes a strict scrutiny or a ration-

al basis analysis applies, but argues in part that the "government intrusions [are] based upon ... the unpopularity of the class."[5] The State responds that the section 903B.1 sentence does not violate a fundamental right.

 A person convicted of a crime that subjects the person to imprisonment has no fundamental liberty interest in freedom from extended supervision. *See Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, 459 (1976)

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.

*Id.* Section 903B.1 commits a convicted person into the custody of the director of the Iowa Department of Corrections, where "the person shall begin the sentence under supervision as if on parole." "Any additional imprisonment will be realized only if [the convicted person] violates the terms of ... parole." *Wade,* 757 N.W.2d at 624. Additionally, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* 510 U.S. 266, 271–72, 114 S.Ct. 807, 812, 127 L.Ed.2d 114, 122 (1994). The matter involved here, the asserted right of a person convicted of and imprisoned for a crime to be free from parole supervision by the state, is different in kind than the privacy and liberty interests noted in *Albright.* *See People v. Oglethorpe,* 87 P.3d 129, 134 (Colo.Ct.App.2004) (discussing a

substantive due process challenge to Colorado Sex Offender Lifetime Supervision Act of 1998, which requires imposition of indefinite sentence upon sex offender, and rejecting a strict scrutiny analysis because "[a]n adult offender has no fundamental liberty interest in freedom from incarceration"). We agree with the State that a rational basis analysis applies here.

 A rational basis standard requires us to consider whether there is "a reasonable fit between the government interest and the means utilized to advance that interest." *Hernandez–Lopez,* 639 N.W.2d at 238. As discussed by our supreme court, "[t]he State has a strong interest in protecting its citizens from sex crimes." *Wade,* 757 N.W.2d at 625. Victims of sex crimes suffer from devastating effects, including physical and psychological harm. *See id.* at 626 (discussing that the devastating effects of sex crimes on victims provide a rational basis for classifying sex offenders differently). Furthermore, "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" *Id.* (quoting *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 1153, 155 L.Ed.2d 164, 183–84 (2003)); *Seering,* 701 N.W.2d at 665. We find there is a reasonable fit between the State's interest in protecting its citizens from sex crimes and the special sentence imposed pursuant to section 903B.1.

 Sallis argues that section 903B.1 violates due process because the "special sentence of lifetime supervision constitutes punishment for crimes not committed." However, this argument is misplaced. Section 903B.1 clearly states that a person convicted of third-degree sexual abuse, "shall also be sentenced, in addition to any

---

5. The State responds in part that sex offenders are not a suspect class. They are not. *See Wade,* 757 N.W.2d at 626 ("Because sex offenders present a special problem and danger to society, the legislature may classify

them differently."); *see also United States v. LeMay,* 260 F.3d 1018, 1030 (9th Cir.2001) (holding that sex offenders are not a suspect class).

other punishment provided by law, to a special sentence...." Sallis is not being punished "for crimes not committed," but rather for third-degree sexual abuse. Furthermore, Sallis's sentence has not been served; the special sentence is part of his sentence for third-degree sexual abuse that he is currently serving. We find this argument without merit. ·

Finally, Sallis argues the "special sentence authorizes new terms of imprisonment for ... conduct which would not be deemed criminal for others." Similar to Sallis's procedural-due-process claim, this argument is based upon a possible future violation of parole and the potential consequences of such a violation, including the potential for new terms of imprisonment. This issue is not ripe for our review. *See Wade*, 757 N.W.2d at 628 (holding that a constitutional challenge to Iowa Code section 903B.2 that was based upon future parole violations was not ripe). We conclude that Iowa Code section 903B.1 does not violate the due process clauses of the United States and Iowa Constitutions. Counsel did not render ineffective assistance by not urging that it did.

## C. CRUEL AND UNUSUAL PUNISHMENT.

 Finally, Sallis claims counsel rendered ineffective assistance by not urging that section 903B.1 imposes cruel and unusual punishment in violation of the United States Constitution.

 The United States Constitution forbids cruel and unusual punishment. U.S. Const. amend. VIII; *see Wade*, 757 N.W.2d at 623 (stating the Eighth Amendment is applicable to the states through the Fourteenth Amendment). This protection "flows from the basic 'precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense.' " *Wade*, 757 N.W.2d at 623

(quoting *Kennedy v. Louisiana,* —— U.S. ——, ——, 128 S.Ct. 2641, 2649, 171 L.Ed.2d 525, 538 (2008)). "Punishment may be considered cruel and unusual because it is so excessively severe that it is disproportionate to the offense charged." *Id.* (citations omitted).

> Generally, a sentence that falls within the parameters of a statutorily prescribed penalty does not constitute cruel and unusual punishment. Only extreme sentences that are "grossly disproportionate" to the crime conceivably violate the Eighth Amendment.
>
> Substantial deference is afforded the legislature in setting the penalty for crimes. Notwithstanding, it is within. the court's power to determine whether the term of imprisonment imposed is grossly disproportionate to the crime charged. If it is not, no further analysis is necessary.

*State v. Cronkhite,* 613 N.W.2d 664, 669 (Iowa 2000) (citations omitted).

Sallis was convicted of third-degree sexual abuse, which is a class C felony punishable by a term of imprisonment not to exceed ten years. Iowa Code §§ 709.4, 902.9(4) (2005). Pursuant to section 903B.1 (Supp. 2005), Sallis is subject to a life-time special sentence. If he violates the terms of his parole, he might have his parole revoked and be required to serve no more than two years upon any first revocation and no more than five years on any second or subsequent revocation. *Id.* § 903B.1. Sallis contends the special sentence is disproportionate to the offense.

 Our analysis begins with a threshold test that measures the harshness of the penalty against the gravity of the offense. *Wade,* 757 N.W.2d at 623; *see Musser,* 721 N.W.2d at 749 (discussing that the *Solem* proportionality test is only used only in the rare case where "a threshold comparison

of the crime committed to the sentence imposed leads to an inference of gross disproportionality"); *see also Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637, 650 (1983) (stating a court should consider gravity of offense, harshness of penalty, sentences imposed on other criminals in the same jurisdiction, and sentences imposed for commission of the same crime in other jurisdictions). This is an objective analysis completed without considering the individualized circumstances of the defendant or the victim in the present case. *Wade,* 757 N.W.2d at 624.

Section 903B.1 imposes a special sentence upon the conviction of a Class C felony or greater sex offense. "[S]ex offenses are considered particularly heinous crimes." *People v. Dash,* 104 P.3d 286, 293 (Colo.Ct.App.2004). As noted above, victims of this offense suffer from devastating effects, including physical and psychological harm, and sex offenders have a "frightening and high" risk of recidivism. *See Wade,* 757 N.W.2d at 626 (quoting *Doe,* 538 U.S. at 103, 123 S.Ct. at 1153, 155 L.Ed.2d at 183–84); *Seering,* 701 N.W.2d at 665.

Further, the offender is sentenced to parole supervision and only if the terms of parole are violated might any additional imprisonment occur. Iowa Code § 903B.1; *Wade,* 757 N.W.2d at 624. "[S]ex offenders present a continuing danger to the public and [ ] a program providing for lifetime treatment and supervision of sex offenders is necessary for the safety, health, and welfare of the state." *Dash,* 104 P.3d at 293; *see also Wade,* 757 N.W.2d at 624 (holding that imposition of a ten-year special sentence for misdemeanor and class D felony sex offenses, with provisions for revocation of release identical to those in section 903B.1, does not constitute imposition of cruel and unusual punishment).

We also note the State's citations to numerous other states with similar special sentences. *See, e.g.,* Wis. Stat. § 939.615 (2009) (providing that a sex offender may be sentenced to lifetime supervision); *see also United States v. Moriarty,* 429 F.3d 1012, 1025 (11th Cir.2005) ("[W]e conclude that that a lifetime term of supervised release is not grossly disproportionate to his child pornography offenses under 18 U.S.C. § 2552A, and his Eighth Amendment claim therefore fails."). We conclude that section 903B.1 (Supp. 2005) is not grossly disproportionate to the gravity of the offenses to which it applies and its imposition does not constitute cruel and unusual punishment.

■ Next, Sallis argues that even if the special sentence itself is not cruel and unusual punishment, the requirement that he register with the state's sex offender registry and the accompanying residency restrictions together with the special sentence cumulatively result in cruel and unusual punishment. *See* Iowa Code §§ 692A.2(1) (setting forth the sex offender registration requirement), 692A.2A (prohibiting a registered sex offender from residing within two thousand feet of a school or child care facility) (2005). However, the registration requirement pursuant to section 692A.2(1) and the residency restriction pursuant to section 692A.2A are not "punishment." *See Willard,* 756 N.W.2d at 212 (stating that "being subject to the residency restrictions [of Iowa Code section 692A.2A] is not punishment"); *State v. Pickens,* 558 N.W.2d 396, 399–400 (Iowa 1997) (holding that the registration requirement of Iowa Code section 692A.2(1) is remedial and not punitive). Because they are not punitive, their imposition together with the special sentence does not add to the "punishment" imposed. Again, we find no violation of the prohibition against cruel and unusual punishment.

## III. CONCLUSION.

We conclude that Iowa Code section 903B.1 (Supp. 2005) does not violate the United States or Iowa Constitutions as claimed. Therefore, we conclude that Sallis's counsel did not render ineffective assistance by not making such claims. We affirm the sentence imposed by the district court.

**AFFIRMED.**