# IN THE COURT OF APPEALS OF IOWA

No. 16-0726
Filed July 6, 2017

**IN RE THE DETENTION OF**
**MICHAEL OGDEN**

**MICHAEL OGDEN,**
　　　　Respondent-Appellant.

_____

Appeal from the Iowa District Court for Plymouth County, Patrick H. Tott, Judge.

Michael Ogden appeals his civil commitment as a sexually violent predator. **REVERSED AND REMANDED.**

Jason A. Dunn, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee State.

Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Today we examine the intersection between the sexually violent predator commitment procedures in Iowa Code chapter 229A and the more recently enacted "special sentencing" for sexual offenders under chapter 903B. Michael Ogden appeals the district court's order committing him as a sexually violent predator. He contends the district court should have granted his motion to dismiss because he was not "presently confined" within the meaning of Iowa Code section 229A.4(1) (2014) when the State filed its civil commitment petition. We agree, and because the State neither amended its petition to allege Ogden committed a recent overt act under section 229A.4(2) nor sought a factual determination under that alternative predicate, we reverse the district court's commitment order and remand for dismissal.[1]

## I. Background Facts and Prior Proceedings

While living in a residential treatment facility, then nineteen-year-old Ogden digitally penetrated a female resident against her will and was charged with assault with intent to commit sex abuse—a sexually violent offense as defined in Iowa Code section 229A.2(10) (2009). Ogden pleaded guilty in December 2010. The district court sentenced him to 365 days in jail with all but thirty days suspended, placed him on probation, and imposed a ten-year special

---

[1] Ogden also challenges the sufficiency of the State's evidence and argues the district court should have granted his motion for mistrial after the prosecutor referred to Ogden's motion in limine during the direct examination of one of the State's experts. Because we find the State did not meet either predicate requirement for filing the commitment petition, it is not necessary to consider Ogden's other arguments.

sentence under Iowa Code section 903B.2. Ogden's probation was later revoked, and the court imposed the suspended jail sentence.[2]

In January 2012, Ogden was released from jail and placed at a residential facility to begin serving his special sentence under section 903B.2. Less than one year later, Ogden reported to his parole officer that he had "nibbled on" a female coworker's ear and "grabbed her butt" while they were gathered with a group of other people in a break area at his place of employment. Starting in January 2013, Ogden was incarcerated for two years for violating the terms of his special sentence.[3]

On November 24, 2014, shortly before Ogden's discharge of the two-year term, the State filed a petition seeking to commit Ogden as a sexually violent predator. Ogden filed a motion to dismiss, asserting he was not "presently confined" within the meaning of section 229A.4 (2014), because at the time he violated his special sentence, "[h]e had completed his sentence for the sexually violent offenses and was only revoked for acts that are not sexually violent offenses." The district court denied Ogden's motion to dismiss, reasoning the special sentence was part of Ogden's conviction for a sexually violent offense and, because Ogden was still serving the special sentence when the petition was filed, he was "presently confined" within the meaning of the statute.

---

[2] Neither the State nor Ogden offered testimony or other evidence about the reason for the probation revocation.

[3] The record does not disclose the precise nature of Ogden's special-sentence violation. On appeal, Ogden asserts he violated the conditions of his special sentence by "not having a job." It is unclear whether the incident with Ogden's coworker resulted in his job loss or to what extent the court considered the incident in finding a violation of his special sentence.

The case proceeded to trial on April 12–14, 2016, and the jury returned a verdict finding Ogden to be a sexually violent predator.  Ogden now appeals.

## II.      Scope and Standard of Review

We review the district court's ruling on Ogden's motion to dismiss for correction of legal error.  *See In re Det. of Stenzel*, 827 N.W.2d 690, 697 (Iowa 2013); *In re Det. of Shaffer*, 769 N.W.2d 169, 172 (Iowa 2009).

## III.     Analysis

The State may seek to civilly commit an individual who appears to be a sexually violent predator by following either of two routes.  *See* Iowa Code § 229A.4 (providing certain criteria to commence proceedings to commit "a person presently confined" and separate criteria to commence proceedings to commit "a person who has committed a recent overt act"); *Shaffer*, 769 N.W.2d at 173.  Our supreme court has described these statutory alternatives as "an either-or proposition."  *Stenzel*, 827 N.W.2d at 699.  The State relied upon the "presently confined" ground in its petition to commit Ogden.  But in resisting his motion to dismiss, the State advanced the alternative theory Ogden had committed a recent overt act.  In this appeal, we are asked to decide if the State successfully navigated either course to commit Ogden as a sexually violent predator.

**Presently Confined.**  "When it appears that a person who is confined may meet the definition of a sexually violent predator," the State may initiate proceedings "no later than ninety days prior to . . . [t]he anticipated discharge of a person who has been convicted of a sexually violent offense from total confinement."  Iowa Code § 229A.3(1)(a).  To be considered "presently confined"

within the meaning of Iowa Code section 229A.4(1), a person must be confined for a sexually violent offense. *See In re Det. of Gonzales*, 658 N.W.2d 102, 104–05 (Iowa 2003).

Ogden contends because he completed his sentence for assault with intent to commit sex abuse and was released from jail, the State could not rely upon the "presently confined" ground for commitment. In support of his position, Ogden relies on two cases: *Gonzales*, 658 N.W.2d at 102–03, and *In re Detention of Ward*, No. 02-1571, 2003 WL 23005197, at *4 (Iowa Ct. App. Dec. 24, 2003). In *Gonzales*, the State filed a petition under section 229A.4(1), seeking to commit Gonzales as a sexually violent predator while he was "presently confined" for operating a motor vehicle without the owner's consent. 658 N.W.2d at 102–03. Gonzales had previously been convicted of sexually violent offenses but had been released from confinement on those offenses two years before the operating-without-consent conviction. *Id.* at 102.

The Iowa Supreme Court concluded allowing the State to commit an individual confined for a nonsexual offense in the absence of a recent overt act would raise "serious constitutional issues." *Id.* at 105. The court explained it would not be "just or reasonable" to commit a person without proving a recent overt act simply because that person was incarcerated. *Id.* (cautioning a contrary interpretation would "allow the State to reach back in time, seize on a sexually violent offense for which a defendant was discharged, and couple this with a present confinement for a totally different—or even perhaps trivial—offense and use chapter 229A to confine the person"). Accordingly, the *Gonzales* court construed the statute to avoid these concerns, holding to satisfy the prerequisite

of present confinement, the individual must be "confined for a sexually violent offense at the time the petition was filed." *Id.* at 104–06.

In *Ward*, this court considered the scope of the confinement requirement, rejecting an argument that "confined" applied only to "those respondents who have been continuously incarcerated, from the moment of their sentencing for a sexually violent offense to the moment a petition for commitment was filed." 2003 WL 23005197, at *4. The court held Ward was "presently confined" within the meaning of the statute because the State filed its petition during his incarceration following a probation violation. *Id.* (seeing no basis to distinguish a person continually confined from the date of sentencing for a sexually violent offense, and someone like Ward, "who had been continually incarcerated for a sexually violent offense for over two years at the time the commitment petition was filed"). Ogden highlights the following dicta from the *Ward* opinion:

> This is not a case where a respondent has completed his term of confinement for the sexually violent offense, but was nevertheless incarcerated at the time the petition was filed for a non-sexually-violent offense or parole violation. We would agree that, in such instances, the State should be required to prove a recent overt act. *See Gonzales*, 658 N.W.2d at 102–03 (requiring recent over[t] act where respondent was discharged from confinement for sexually violent offense, but was incarcerated for motor-vehicle-related violation); *In re Albrecht*, . . . 51 P.3d 73, 78 (Wash. 2002) (requiring proof of recent overt act, where at time the petition was filed respondent had completed two-year prison term for sexually violent offense but was serving jail sentence for violating the community placement portion of his sentence).

*Id.*

Two years after *Gonzales* and *Ward* were filed, the legislature enacted Iowa Code sections 903B.1 and .2, which subject individuals who are convicted of sex crimes to an additional parole-like "special sentence," commencing "upon

completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense." *See* Iowa Code §§ 903B.1–.2. Depending on the severity of the underlying offense, convicted individuals are committed into the custody of the director of the Iowa Department of Corrections for either ten years or the rest of their lives, with eligibility for parole. *See id.* §§ 903B.1 (imposing a lifetime special sentence on any person convicted of a class "C" felony or greater offense under chapter 709 or a class "C" felony under section 728.12), .2 (imposing a ten-year special sentence on any person convicted of a misdemeanor or a class "D" felony under chapter 709, section 726.2, or section 728.12). Upon a violation of the terms and conditions of the special sentence, the court may revoke the individual's release: "The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation." *Id.* §§ 903B.1, .2; *see also id.* § 908.5(2).

After enacting the "special sentencing" under sections 903B.1 and .2, the legislature did not amend the sexually-violent-predator notice and petition provisions in sections 229A.3 and .4. Accordingly, it is unclear how the legislature intended to treat "confinement" for a special-sentence violation in the context of a chapter 229A civil commitment. *See Gonzales*, 658 N.W.2d at 104 (finding "plain meaning" of confinement was "not plain at all").

Our court has previously looked at how these two chapters fit together but from the other direction. *See In re Det. of West*, No. 11-1545, 2013 WL 988815, at *3 (Iowa Ct. App. Mar. 13, 2013). In *West*, the State filed a petition under section 229A.4(1) while the respondent was still serving his prison sentence for

the underlying sexually violent offense and before his special sentence commenced under section 903B.2. *Id.* at \*1. West argued the petition was premature and the legislature intended individuals to be subject to commitment under chapter 229A only after they discharged their underlying sentence, including the "special sentence" under section 903B.2. *Id.* at \*2. Our court disagreed, holding the phrase "total confinement" in section 229A.3(1)(a) meant "complete or full imprisonment."[4] *Id.* at \*3. We reasoned: "Reading the two statutes together, section 903B.2 does not alter the section 229A.3(1)(a) requirement that the potential [sexually violent predator] must be close to discharging the total confinement portion of his sentence imposed for his conviction of a sexually violent offense." *Id.* In *West* we concluded, because of the dangerous nature of sexually violent predators, "it makes sense that such a petition should be filed *before* a potential [sexually violent predator] is released into society, even if the anticipated release is subject to parole, probation, or any other kind of supervision." *Id.*

So if, under the reasoning in *West*, the State may file its petition while the respondent is still confined on the underlying offense and *before* the "special

---

[4] Iowa Code chapter 229A does not define "total confinement." The same phrase is used in a comparable sexually-violent-predator statute in Washington. Wash. Rev. Code § 71.09.025(1)(a)(i) (2017) (allowing State to initiate commitment proceedings three months before "[t]he anticipated release from total confinement of a person who has been convicted of a sexually violent offense"); *see also id.* § 71.09.030 (providing the State may file a commitment petition when: (1) "[a] person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement," or (2) "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act."). Washington's legislature defines "total confinement" as "confinement inside the physical boundaries of a facility or institution operated . . . by the state or any other unit of government for twenty-four hours a day." *See In re Det. of Anderson*, 139 P.3d 396, 403 (Wash. Ct. App. 2006) (citation omitted).

sentence" commences, does the State also have a second option—as it did in Ogden's case—to file its petition *after* the respondent has been released from "total confinement" into the community, the special sentence has commenced, and then release is revoked?  Ogden would answer "no"—he contends, because the State waited until his original sentence of confinement was discharged, it may not bring a sexually-violent-predator petition without proving he committed a recent overt act.  He argues the revocation of his release under section 903B.2 is distinct from the original confinement for a sexually violent offense because under the "special sentence" he was allowed to live and work in the community, and if he continued to pose a danger as a sexual predator, it could be detected through his conduct.

Ogden's argument echoes the position of the Washington Supreme Court when considering a similar question under its sexually-violent-predator act.[5]  *See Albrecht*, 51 P.3d at 75–78.  In *Albrecht*, after a sex offender was released from prison, placed on community supervision, and then confined for a violation of his

---

[5] Our courts have consistently found Washington case law regarding sexually-violent-predator commitments to be persuasive.  *See, e.g.*, *Stenzel*, 827 N.W.2d at 701 (citing Washington case for proposition respondent is "presently confined" if respondent has been continuously incarcerated on a term that includes a sentence for a sexually violent offense at the time State files petition); *In re Det. of Williams*, 628 N.W.2d 447, 458 (Iowa 2001) (citing Washington case for proposition "likely" means "more likely than not" without the risk of falling below the constitutionally required minimum of clear and convincing evidence); *In re Det. of Ewoldt*, 634 N.W.2d 622, 624 (Iowa 2001) (citing Washington case for proposition pedophilia constituted a "mental abnormality"); *In re Det. of Johnson*, No. 10-1462, 2012 WL 1860242, at *5 (Iowa Ct. App. May 23, 2012) (citing Washington case for proposition "proof of a recent overt act is necessary only where a sexually violent offender has been released from total confinement and spent time in the community"); *Ward*, 2003 WL 23005197, at *4 (suggesting the State would be required to prove a recent overt act if respondent was incarcerated due to a parole violation and citing *Albrecht*, 51 P.3d at 78, with approval); *Springett v. Iowa Dist. Ct.*, No. 01-1432, 2002 WL 31882912, at *1 (Iowa Ct. App. Dec. 30, 2002) (citing Washington case with approval and noting Washington's "civil commitment statute [is] very similar to Iowa Code chapter 229A").

community supervision, the State filed a commitment petition under Washington's sexually-violent-predator act—without alleging a recent overt act. *Id.* at 76. The Washington Supreme Court rejected the State's argument that "when an offender is released into the community and is later totally incarcerated, no proof of a recent overt act is required." *Id.* at 78 (noting "Albrecht could have easily been jailed for consuming alcohol, going to a park, or moving without permission, each of which would have been a violation of the terms of his community placement but none of which would amount to a recent overt act as defined by the sexually violent predator statute"). The *Albrecht* opinion held:

> [T]o relieve the State of the burden of proving a recent overt act because an offender [was incarcerated] for a violation of the conditions of community placement would subvert due process. An individual who has recently been free in the community and is subsequently incarcerated for an act that would not in itself qualify as an overt act cannot necessarily be said to be currently dangerous.

*Id.*

The State urges a different view of section 229A.4, contending Ogden was "presently confined" because he had not yet "been discharged after completion of the sentence imposed for the offense." *See* Iowa Code § 229A.4(2)(a). The State points out Ogden "had not successfully completed the special sentence component of his sentence, and thus his confinement was the direct result of [the original] offense." In support of its position, the State cites *State v. Harkins*, 786 N.W.2d 498, 505 (Iowa Ct. App. 2009), in which our court rejected defendant's due-process claim that his lifetime supervision under section 903B.1 was punishing him for "crimes not committed" and characterized the special sentence as "part of" the sentence being served for the underlying sexual-abuse offense.

We do not find *Harkins* to be persuasive in the context of chapter 229A. *Harkins* addressed a constitutional challenge to the multi-layered sex-offender sentencing under section 903B.1, but it did not illuminate how the divisible parts of a sex offender's sentence should be treated under sections 229A.3 and .4. To the extent that judicial interpretations of the special sentences influence our decision today, we note that in both *Harkins*, 786 N.W.2d at 505, and *State v. Tripp*, 776 N.W.2d 855, 858–59 (Iowa 2010), the appellate courts recognized a dividing line between the sentence for the underlying criminal offense and the "special sentence" to commence after the completion of the underlying sentence by finding constitutional challenges directed only at the "special sentence" were not ripe for adjudication before the offenders started to serve their parole-like terms. *See id.* §§ 903B.1, .2 (stating "special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense").

When deciding what it means to be "presently confined" for a sexually violent offense under section 229A.4(1), we do not assess "words and phrases in isolation, but instead by incorporating considerations of the structure and purpose of the statute in its entirety." *See Den Hartog v. City of Waterloo*, 847 N.W.2d 459, 462 (Iowa 2014). When we consider "the context in which words are used," we are able to decipher their "ordinary meanings" to best achieve the statute's purpose. *Id.* (finding "contextual cues" from "related statutory provisions and our caselaw"). The purpose of chapter 229A is to provide "a small but extremely dangerous group of sexually violent predators" with "long-term care and treatment" through procedures that "reflect legitimate public safety

concerns." Iowa Code § 229A.1. The later-enacted "special sentencing" in chapter 903B casts a broader net by imposing an additional period of supervision on all individuals convicted of sexual-abuse offenses under Iowa statutes. *See Kolzow v. State*, 813 N.W.2d 731, 737 (Iowa 2012) (explaining "legislature's objective in enacting the special sentence provisions . . . was to further protect the citizens of Iowa from sex crimes"). In this larger context, we examine the procedure for filing a petition alleging an individual falls into that uber-dangerous category of sex offenders when he has been released from confinement for his underlying sexual offense. Our analysis consists of two prongs: (1) reading the phrase "presently confined" in section 229A.4(1) in conjunction with the phrase "total confinement" in section 229A.3 and (2) accounting for the recent-overt-act requirement from *Gonzales*.

First, we read the terms "confined" and "confinement" consistently across sections 229A.3 and 229A.4. *See State ex rel. Miller v. Midwest Pork, L.C.*, 625 N.W.2d 694, 698 (Iowa 2001) (giving consistent definition to related words "construct" and "construction"). We are convinced the phrase "total confinement" in section 229A.3 applies to confinement for "the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense" and not to potential imprisonment faced by an individual who is on supervised release under section 903B.1 or .2 if that release is eventually revoked. Section 229A.3 describes "total confinement" as including readmission to prison after "revocation of parole" but not as including "revocation of release" under section 903B.1 or 2. The State's contrary interpretation could lead to absurd results. For instance, an individual could be on supervised release in the community for up to a decade (or

more if the individual remained on lifetime supervision under section 903B.1) without committing a sexually violent act. But if the individual were revoked for conduct which violated a term or condition of that release (but did not constitute a recent overt act as defined in section 229A.2(8)), the State could nevertheless file a petition under section 229A.4(1) without showing a recent overt act. In that case, the original sexually violent offense—committed years earlier—would form the only basis for determining if the individual was "likely to engage in predatory acts of violence" under section 229A.2(5). Using the extended supervision of all sex offenders afforded by chapter 903B to expand the State's opportunities to commence civil commitment proceedings against what is supposed to be "a small but extremely dangerous group of sexually violent predators" would construe the phrases "total confinement" and "presently confined" too broadly.

Second, allowing the State to file a civil commitment petition based on an attenuated connection to the respondent's original sexually violent offense "would raise serious constitutional issues." *See Gonzales*, 658 N.W.2d at 105 (citing Iowa Code § 4.4(1) (stating presumption that, in enacting a statute, "[c]ompliance with the Constitutions of the state and of the United States is intended")). Under *Gonzales*, the recent-overt-act requirement must be satisfied whether the State is proceeding under section 229A.4(1) or (2). *Id.* If the individual is confined for a sexually violent offense at the time the State files the petition, "[t]he recent act would simply be deemed to be the act for which the person is presently confined." *Id.* Since *Gonzales*, our courts have elaborated on the rationale for allowing the State to rely upon present confinement, emphasizing the respondent's limited ability to commit an overt act while confined. *See, e.g., In re*

*Det. of Willis*, 691 N.W.2d 726, 729 (Iowa 2005) ("The absence of sexually predatory acts in a setting of secure confinement does not paint the same picture as the absence of such acts in a normal life situation."); *Stenzel*, 827 N.W.2d at 700 ("Regardless of the portion of the sentence that the inmate may be technically serving, he or she is still in 'secure confinement,' thus limiting the opportunity to commit 'sexually predatory acts.'"); *Johnson*, 2012 WL 1860242, at *5 (citing *In re Det. of Lewis*, 177 P.3d 708, 713–14 (Wash. 2008), for the proposition proof of a recent overt act is required only when a sexually violent offender has been released from confinement and spent time in the community). These cases persuade us that the phrase "presently confined for a sexually violent offense" should be construed narrowly so as not to diminish the State's burden of proving dangerousness. *See Gonzales*, 658 N.W.2d at 105 ("To confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or to another." (quoting *Lynch v. Baxley*, 386 F. Supp. 378, 391 (M.D. Ala. 1974))).

Ogden completed his sentence of incarceration for his 2010 conviction and was released back into the community in 2012. Had the State wanted to commit Ogden based on his 2010 conviction, it could have done so by filing the commitment petition before he discharged the sentence for the underlying offense. *See West*, 2013 WL 988815, at *3. But the State did not do so. If the State did not consider the respondent too dangerous to release into society— subject to the "special sentence" under section 903B.2—then we conclude a

petition filed after his release from "total confinement" must be premised on the commission of a recent overt act. Because Ogden was released back into the community following his discharge, the rationale for allowing the State to rely upon present confinement dissipated—"proof of a recent overt act [was] no longer an impossible burden for the State to meet." *Albrecht*, 51 P.3d at 78.

In sum, to be true to *Gonzales*, we conclude being "presently confined" for a sexually violent offense requires proof of present confinement for the underlying sexual offense and not a subsequent revocation for violating the terms and conditions of release under section 903B.2.[6]

**Recent Overt Act.** Because we find Ogden was not "presently confined" within the meaning of section 229A.4, we turn to the State's argument that we may affirm based on the commission of a recent overt act. A "recent overt act" is "any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm." Iowa Code § 229A.2(7). A finding of a "recent overt act" involves "an objective assessment based on all the surrounding circumstances." *In re Det. of Swanson*, 668 N.W.2d 570, 576 (Iowa 2003). The State alleges Ogden's physical contact with his female coworker in 2012 qualifies as a recent overt act.

The State did not allege a recent overt act in its petition, nor did it seek to amend the petition to add this alternative ground. And while there may be evidence in the record that could support a finding of a recent overt act, the issue

---

[6] In accordance with this construction, when the State relies upon a recent overt act under section 229A.4(2), a person is considered "discharged after the completion of the sentence imposed for the offense" once the sentence *for the underlying sexually violent offense* has been discharged.

was never submitted to or decided by a fact finder.[7] We decline to make this fact-finding for the first time on appeal.

Accordingly, we reverse the commitment order and remand for dismissal of the petition. *See, e.g.*, *Gonzales*, 658 N.W.2d at 106 (reversing and remanding for dismissal after finding respondent "was not confined for a sexually violent offense at the time the petition was filed, and the State failed to prove, or even allege, a recent overt act that meets the definition of the statute"); *In re Det. of Taute*, No. 01-1686, 2003 WL 289014, at *1 (Iowa Ct. App. Feb. 12, 2003) (same); *see also Matlock*, 2003 WL 288999, at *2 & n.2 (reversing and remanding for dismissal after State raised alternative recent-overt-acts argument in resistance to respondent's motion to dismiss but did not allege a recent overt act in its petition, "did not attempt to have the jury instructed on this 'recent overt act' predicate . . . [, and] the issue was never submitted and decided by the fact-finder").

**REVERSED AND REMANDED.**

---

[7] At oral argument, the parties disagreed whether Ogden had a right to have a jury decide the recent-overt-act issue. *See* Iowa Code § 229A.7(5)(a) (noting the right to have a jury determine the question "whether, beyond a reasonable doubt, the respondent is a sexually violent predator"); *id.* § 229A.2(4) (defining an element of the sexually-violent-predator definition—"likely to engage in predatory acts of sexual violence"—and noting "[i]f a person is not confined at the time that a petition is filed, a person is 'likely to engage in predatory acts of sexual violence' only if the person commits a recent overt act"); *see also Swanson*, 668 N.W.2d at 574 & n.3 (declining to comment on the propriety of the district court's decision to bifurcate trial, with the court deciding whether a respondent's conduct constituted a recent overt act and the jury deciding the other issues); *In re Det. of Matlock*, No. 01-1094, 2003 WL 288999, at *2 (Iowa Ct. App. Feb. 12, 2003) (assuming the recent-overt-act predicate was a jury question). Because neither the judge nor the jury made this determination below, we find it unnecessary to decide this issue.